UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IVAN LAGUNA and <br> MARGARITA LOPEZ <br>     Plaintiffs <br> <br> v. <br> <br> LAZER SAFE, PTY, LTD, <br> FIESSLER ELECTRONIK GmbH & CO., KG., <br> ERMAK USA, INC., <br> ERMAKSAN TURKEY, aka <br> ERMAKSAN MAKINA SANAYI VE TICARET <br> A.S., and <br> JOHN DOE DISTRIBUTOR <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | C.A. No. 3:23-CV-30016 |

## MOTION TO DISMISS

NOW COMES, Defendants Ermak USA, Inc., ("Ermak USA") and Ermaksan Turkey aka Ermaksan Makina Sanayi Ve Ticaret ("Ermaksan"), collectively as "Defendants", by and through counsel, move to dismiss Plaintiffs Ivan Laguna and Margarita Lopez's ("Plaintiffs") Second Amended Complaint under Federal Rule 12(b)(6) for failure to allege sufficient facts to state any plausible claim against Defendants Ermak USA and Ermaksan and the inadequacy of each cause of action and move to dismiss Ermaksan under Federal Rule 12(b)(2) for lack of personal jurisdiction. In support of this Motion Defendants states the following:

## INTRODUCTION

Plaintiffs bring four claims against both Ermak USA and Ermaksan allegedly arising from the use of a press brake machine. Those claims include negligence, breach of implied warranty, violation of Massachusetts General Law Chapter 93A, and loss of consortium. All of Plaintiffs' claims fail because the claims are conclusory in nature. Further, Plaintiff has not

1

provided factual support in its recitation of the elements of the claims. Plaintiffs' Second Amended Complaint fails to state a claim upon which relief may be granted.

## FACTS

Ermaksan manufactured a press brake machine, Type; CNCSAP 12X220; Model: 2007; Machine No.; SN20071136 ("Subject Machine"). The Subject Machine is used to bend metal. On or about September 29, 2020 Plaintiff Laguna was injured allegedly while working with the Subject Machine. On February 14, 2023, Plaintiffs filed the Complaint which commenced this action, they filed their Amended Complaint on March 6, 2023, and filed their Second Amended Complaint on April 4, 2023.

## ARGUMENT

**I.    Personal Jurisdiction Does not Exist over Ermaksan**

Plaintiffs have failed to establish any facts that support that this Court has personal jurisdiction over Ermaksan. In order for Plaintiffs to prove personal jurisdiction, they must satisfy both Massachusetts' long-arm statue and the Due Process Claus of the Constitution. *United States v. Swiss Am. Bank, Ltd.,* 274 F.3d 610, 618 (1st Cir. 2001). In order to satisfy the long-arm statute of M.G.L. c. 223A, § 3, a non-resident defendant must meet one of the following requirements: (a) transacting business in Massachusetts; (b) contracting to supply services or things in Massachusetts; (c) causing tortious injury in Massachusetts while in Massachusetts; (d) causing tortious injury in Massachusetts by an act or omission outside of Massachusetts if the person regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in Massachusetts; (e) having an interest in, using or possessing real property in Massachusetts; or (f) contracting to insure a person or property in Massachusetts.

Here, Plaintiffs state only conclusively that Ermaksan actively conducted business in Massachusetts, with no support. In fact, as their complaint states, Ermaksan is located in Turkey and does business in Turkey. Ermaksan has not been transacting business in Massachusetts nor contracting to supply services or things in Massachusetts. Ermaksan did not introduce the subject machine to a party in Massachusetts or sell the machine with knowledge that the subject machine would end up in Massachusetts and Ermaksan does not consistently solicit or engage in business there. In fact, Ermaksan does not even ship any of its products directly to the distributors, but rather, Ermaksan sells its product Turkey, where the distributors pick up the shipment from Ermaksan. Ermaksan does not have any knowledge where the product goes once the distributor picks up the shipment. In addition, Ermaksan does not own or lease any property in Massachusetts, does not have any employees there nor any other assets there and does not have any contracts to insure a person or property in Massachusetts. Plaintiff did not and cannot establish any of the requirements to meet the long-arm statute of Massachusetts that provides personal jurisdiction over Ermaksan.

Plaintiffs have failed to also provide any facts to prove that this Court has general or specific jurisdiction over Ermaksan. Ermaksan must have "certain minimum contacts" with Massachusetts "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash. Office of Unemployment,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Further, "[t]he accepted mode of analysis for questions involving personal jurisdiction concentrates on the quality and quantity of the potential defendant's contacts with the forum." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st Cir. 1999). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a substantial connection

with the forum State." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal. Solano County*, 480 U.S. 102, 109 (1987).

General jurisdiction is existent where defendant engaged in continuous and systematic activity, unrelated to the suit, in the forum state.'" *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n,* 142 F.3d 26, 34 (1st Cir. 1998) (quoting *United Elec., Radio & Mach. Workers v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992)). Specifically, there is general jurisdiction where 1) the defendant is at home in the state in which the court sits, or (2) when the defendant's activities in that state are "substantial" or "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). For a corporation to be at home in the forum state, it must be so connected to the state that it can be compared to a corporation that domestic in the forum. *Daimler AG v. Bauman*, 134 S. Ct. 746, 758 n.11 (2014). The activities must be "so substantial and of such a nature as to justify suit against [that defendant] on causes actions arising from dealings entirely different from those activities" whereas specific jurisdiction depends upon defendant's action in which the litigation "is founded directly on those activities." *International Shoe Co, v. Washington*, 326 U.S. 310, 318.

Here, Ermaksan's principal place of business and only office is in Bursa, Turkey. Further, Ermaksan has not engaged in substantial or continuous and systemic activities in Massachusetts. In fact, Ermaksan has not engaged in any activities within Massachusetts or aimed at Massachusetts. Ermaksan does not in engage in any manufacturing, designing or marketing in Massachusetts. As stated above, Ermaksan does not have any offices, agents, and facilities in Massachusetts. Plaintiffs did not and cannot plead these facts or provide any allegations that render the Massachusetts court having general jurisdiction over Ermaksan.

Specific jurisdiction has three required elements that must be met for a finding of specific jurisdiction which are relatedness, purposeful availment (sometimes called 'minimum contacts') and reasonableness." *Adelson v. Hananel*, 652 F.3d 75, 82 (1st Cir. July 13, 2011). First, there must be a finding that the litigation directly "relates to or arises out of the defendant's contacts with the forum." *Phillips Exeter Acad.*, 196 F.3d at 288. This means that there must be a finding that defendant's contacts with the forum state caused the harm that plaintiff is alleging. *Ticketmaster-New York, Inc. v. Alioto*, 26 F.3d 201, 207 (1st Cir. 1994). Second, there must be a finding that defendant's contacts "represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *Sawtelle v. Farrell*, 70 F.3d 1381, 1389 (1st Cir. 1995). Specifically, this element turns to an analysis of whether defendant has intentionally participated in significant activities in the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). Defendant's activities in the forum state cannot be "random, fortuitous, or attenuated" or result solely from "the unilateral activity of another party or a third person." *Id.* This second element also requires an analysis of whether defendant's activities within the forum state "should reasonably anticipate being haled into court there." *Id.* at 474. Lastly, if these two elements of specific jurisdiction are met, then there must be a determination of whether the exercise of personal jurisdiction is reasonable using the "Gestalt factors." *Sawtelle*, 70 F.3d at 1394. The "Gestalt factors" include an analysis of "(1) the defendant's burden of appearing; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the judicial system's interest in obtaining the most effective resolution of the controversy; and (5) the common interests of all sovereigns in promoting substantive social policies." *Id.*

Here, plaintiffs have not sufficiently plead minimum contacts for Ermaksan, and they cannot because Ermaksan lacks the minimum contacts with Massachusetts that relate to Plaintiffs' claims. While the subject machine may have ended up in Massachusetts, Ermaksan did not bring the subject machine itself there nor does the subject machine being in Massachusetts provide sufficiency to hold that Massachusetts has minimum contacts with the state. Plaintiffs cannot plead otherwise because the subject machine was sold in Turkey to a company based in Minnesota om 2007. Furthermore, Ermaksan has not engaged in any activities in or directed any activities to Massachusetts nor is there any presence of it in the state. Ermaksan has not intentionally availed itself of the privileges of conducting any activities within Massachusetts. As Ermaksan is a Turkish corporation with no connections to Massachusetts, it would be a significant burden for it to defend itself in Massachusetts. Plaintiffs cannot claim any specific activities that Ermaksan has conducted within Massachusetts let alone significant activity. Ermaksan has not enjoyed the protections of Massachusetts laws nor does it intend to or need to because it does not conduct business within the state. Ermaksan has no connection to Massachusetts that would satisfy the requirements of having personal jurisdiction over it in the state and Plaintiffs did not and cannot plead as such.

## II.     Standard of Review for a 12(b)(6) Motion to Dismiss

The Second Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) due to the insufficiency of the facts alleged in the Second Amended Complaint. In order for the complaint to be sufficient under Massachusetts law, the plaintiff is obligated to provide "factual allegations that are able to plausibly suggest (not that are merely consistent with) an entitlement to relief above the speculative level." *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 890 (2008). In order to determine if the plaintiff has met their obligation, the court must

"treat all well-pleaded facts in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *In re Fin. Oversight & Mgmt. Bd. for P.R.,* 919 F.3d 121, 127 (1st Cir. 2019) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 7 (1st Cir. 2011)). However, courts "do not accept legal conclusions cast in the form of factual allegations." *Iannacchino* at 890. Further, "a formulaic recitation of the elements of a cause of action" are insufficient as well. *Bell Atl. Corp. v. Twombly*, 550 U.S. 555 (2007). In the current Second Amended Complaint, Plaintiffs do not include any information or facts regarding the alleged incident nor do Plaintiffs "invoke [any] fact that connects the Defendants' actions with the purported harm." *Dunn v. Genzyme Corp.*, 161 N.E.3d 390, 399 (2021). Plaintiffs merely state broad unfounded conclusions alleging negligence and connection and such causes of actions where "no factual allegations are provided to ground labels and conclusions are insufficient to survive a motion to dismiss." *Iannacchino* at 890. While Plaintiffs need only meet the basic pleading standard, Plaintiffs are not allowed to file a complaint that "requires a fact finder to jump from one inference to another absent any of the necessary factual support." *Dunn* at 390. Thus, since Plaintiffs have not alleged sufficient facts to raise the right to relief above the speculative level, the Second Amended Complaint should be dismissed.

### III.  Plaintiffs' Allegations against Ermak USA Should be Dismissed in its Entirety

Plaintiffs make the same allegations against both Ermak USA and Ermaksan regarding the Model 2007[1] Subject Machine since "under Massachusetts law, a plaintiff can recover for negligence and breach of warranty, express or implied, if the plaintiff was a person whom the manufacturer, seller, lessor or supplier might reasonably have expected to use, consume, "or be

---

[1] In accordance with Massachusetts Rule of Evidence Section 201(b), the court may take judicial notice of the fact that Ermak USA did not exist as an entity until September 2010.

affected by the goods." *Mills v. Allegiance Healthcare Corp.*, 178 F. Supp. 2d 1 (D. Mass. 2001) (quoting Mass. Gen. L. ch. 106, § 2–318). Due to the identical allegations and liabilities, the Defendants will be treated together and the arguments related to the reasons for motion to dismiss shall relate to both parties.

IV. **Plaintiffs Fail to State a Claim of Negligence**

The three product liability theories that Massachusetts courts recognize are ""a manufacturing defect, a design defect, or a warning defect, that is, a failure reasonably to warn of the product's foreseeable risks of harm." *Evans v. Lorillard Tobacco Co.*, 465 Mass. 411, 422 (2013). "[A] plaintiff must show the existence of an act or omission in violation of a . . . duty owed to the plaintiff[] by the defendants," which causes plaintiff harm. *Rafferty v. Merck & Co., Inc.*, 92 N.E.3d 1205, 1213 (Mass. 2018). Further, Courts are obliged to grant a defendant's motions to dismiss where Plaintiff "has no reasonable expectation of proving that [his injury] was a foreseeable result of the defendant's negligent conduct." *Hebert v. Enos*, 806 N.E.2d 452 (Mass. App. Ct. 2004)). Here, Plaintiff lumped all three of these theories together in a conclusory manner in two paragraphs without any factual support for any of the three theories. Second Amended Complaint, ¶ 25, 26. Plaintiff did not distinctly bring a products liability claim under the three theories, but rather combined all three along with other theories that are not necessarily recognized by Massachusetts courts. Even if Plaintiffs bring a distinct claim for each of the three theories, Plaintiffs still fail to state a claim.

A. **Plaintiffs' Fail to State a Claim of Negligence Based on Design and Manufacturing**

To prove design negligence, Plaintiff must prove that "(1) the manufacturer's failure to exercise a reasonable degree of care under the circumstances; (2) proximate causation; and (3) injury and/or loss." *Ducat v. Ethicon, Inc.*, 2021 WL 1408120, at *5 (D. Mass. April 14, 2021)

8

(quoting *Geshke v. Crocs, Inc.*, 889 F. Supp. 2d 253, 261 (D. Mass. 2012)). "For a product to be defective, it must be 'made according to an unreasonably dangerous design' and does not meet a consumer's reasonable expectation as to its safety.'" *Niedner v. OrthoMcNeil Pharm., Inc.,* 90 Mass. App. Ct. 306, 312 (2016). To establish breach of duty, the plaintiff must prove that the defendant 1) failed to exercise reasonable care to eliminate avoidable dangers to the user and 2) there is an alternative design available which would allow the product to perform the same function in a safer fashion." *Provanzano v. MTD Products Co.,* 215 F. Supp. 3d 134, 139 (D. Mass. 2016). "For a product to be defective, it must be 'made according to an unreasonably dangerous design' and does not meet a consumer's reasonable expectation as to its safety." *Niedner v. Ortho-McNeil Pharm., Inc.,* 90 Mass. App. Ct. 306, 312 (2016) quoting from Prosser, Torts § 99, at 659 (4th ed. 1971). "In claims alleging negligence in the design of a product, . . . the plaintiff must show an available design modification which would reduce the risk without undue cost or interference with the performance of the product." *Evans v. Lorillard Tobacco Co.*, 465 Mass. 411, 443-44 (2013). "Under a theory of negligent design, a total product line is claimed to be defective because of faulty design. *See* Restatement (Second) of Torts s 398 (1965). "Thus, the essence of this theory is that all products of a particular type are defective when they leave the manufacturer" and "plaintiff must show that the defect existed at the time the product left the manufacturer." *Smith v. Ariens Co.*, 375 Mass. 620, 626 (1978). Where a plaintiff does not identify what particular problem in the design caused her injury, the court will find that plaintiff failed to adequately plead the design defect theory. *Scism v. Ethicon, Inc.*, 2020 WL 1245349, at *4 (N.D.N.Y. Mar. 16, 2020).

"A defect from manufacturing, as opposed to design, occurs when a product differs from identical products issued from the same manufacturer." . . . "In an action based on negligence,

the plaintiffs have the burden of proving that a defect attributable to the manufacturer's negligence caused the injury." *Arbella Mut. Ins. Co. v. Field Controls, L.L.C.,* No. CV 16-10656-LTS, 2019 WL 1489877, at *2 (D. Mass. Apr. 4, 2019) (quoting *Wasylow v. Glock, Inc.*, 975 F. Supp. 370, 377 (D. Mass. 1996) and *Corsetti v. Stone Co.*, 483 N.E.2d 793, 805 (Mass. 1985)). The plaintiff must prove that there is a "deviation from the design [that] rendered the product unreasonably dangerous and therefore unfit for its ordinary purposes." *Back v. Wickes Corp.*, 375 Mass. 633, 641 (1978)). "A defect from manufacturing, as opposed to design, occurs when a product differs from identical products issued from the same manufacturer." *Wasylow v. Glock, Inc.*, 975 F. Supp. 370, 377 (D. Mass. 1996).

Here, Plaintiffs do not state what exactly is wrong with the Subject Machine or the design of it. In paragraphs 25, 26, 40 and 41 of the Second Amended Complaint, Plaintiff merely states that Defendants were "negligent with respect to design and manufacturing…" and that as a result of the negligence, Plaintiff Laguna was injured. Plaintiffs do not identify what part of the Subject Machine was designed negligently. Plaintiffs also do not identify any deviation or flaw in the manufacturing process. There are no specificities to Plaintiffs' claims. Plaintiffs do not state why the Subject Machine was designed or manufactured negligently and cannot identify how the design and/or manufacturing was allegedly defective. Further, Plaintiffs cannot link their claimed injuries to any alleged defects. There are no facts that state the link between the injuries to a specific part of the Subject Machine. Plaintiff only states general conclusory statements. Plaintiffs have not only failed to fully include all the elements of both a design defect theory and manufacturing theory under negligence, but they have also failed to state any facts to support its claims. In addition, Plaintiff does not even mention an alternative design which is a requirement to bring a claim for negligent design. In addition, "[t]he plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully" and "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). The subject machine was created in 2007, so the design of the subject machine was created at least 16 years. This further provides the strength of the design of the subject machine which Plaintiff has failed to attack with specificity. Plaintiff fails to provide any plausibility that the design of the subject machine was done negligently despite it being the design of the subject machine for at least the last 16 years. Plaintiff has failed to plead the elements of a negligence claim based on design and manufacturing defect.

### B. Plaintiffs' Fail to State a Claim of Negligence Based on Failure to Warn

"'In Massachusetts, a manufacturer can be found liable to a user of the product if the user is injured due to the failure of the manufacturer to exercise reasonable care in warning potential users of hazards associated with the use of the product.'" *Langlois v. Am. Med. Sys., Inc*., CIVIL ACTION NO. 4:20-40021-TSH, 2020 WL 2616305, at *2 (D. Mass. May 22, 2020) (quoting *Laaperi v. Sears, Roebuck & Co.,* 787 F.2d 726, 729 (1st Cir. 1986)). Where a plaintiff fails to provide a description of the warnings, it is insufficient to state a claim for failure to warn. *Taupier v. Davol, Inc.,* 490 F. Supp. 3d 430, 446-47 (D. Mass. 2020).

Plaintiffs do not include any facts as to the warning labels on the Subject Machine. Plaintiffs simply state that the Defendants were "negligent with respect to equipping the Subject Machine with inadequate…warnings and/or instructions." Second Amended Complaint, ¶ 25, 40. This is a generalized conclusory statement with no specificity. The Second Amended Complaint does not even reference the warning labels that are on the Subject Machine. Plaintiffs have failed

to include the warning labels and they have also failed to include any explanations or even statements as to the inadequacy of the warning labels let alone what dangers that it failed to warn of. Plaintiffs have failed to recite any of the elements for a failure to warn claim and have not provided any facts to support the claim beyond mere conclusion. Plaintiffs have not stated a claim that raises a right to relief above the speculative level for a claim for failure to warn.

### C. Plaintiffs Fail to State a Claim of Negligence Based on Testing, Inspecting, Distributing, and Selling

In a claim for negligent testing or inspection, the plaintiff must allege sufficient facts to plausibly suggest that "the accident would not have occurred had an adequate inspection taken place" and that the "damages were a probable result" of the breach. *Power Serv. Supply, Inc. v. E. W. Wiggins Airways, Inc.,* 399 N.E.2d 878, 882 (1980). In this case, Plaintiffs do not state what exactly was negligent in regards to the testing or inspection of the Subject Machine, its component parts, or controls. In paragraphs 25, 26, 40 and 41 of the Second Amended Complaint, Plaintiff merely states that Defendants were "negligent with respect to testing and inspection," among other conclusory allegations, and that as a result of the negligence, Plaintiff Laguna was injured. Plaintiffs have not and cannot link their claimed injuries to any alleged defects. Thus, Plaintiffs have not stated a claim that raises a right to relief above the speculative level for a claim for negligent testing, inspecting, distributing, and selling. Further, because Ermak USA was not formed until 2010, it could not have been involved with testing, inspecting, distributing, and selling the Subject Machine that was sold in 2007.

### V. Plaintiffs Fail to State a Claim of Breach of Implied Warranty

To state a claim for breach of implied warranty of merchantability, the plaintiff must plead facts sufficient to allege that "(1) the defendant manufactured or sold the product that

eventually injured the plaintiff; (2) the product had a defect or otherwise unreasonably dangerous condition such that it was unsuited for the ordinary use for which it was sold; (3) the plaintiff used the product as intended by the defendant or in a manner that was at least foreseeable to the defendant; and (4) the defect or unreasonably dangerous condition was a legal cause of the plaintiff's injury." *Fireman's Fund Ins. Co. v. Bradford-White Corp.,* No. 12-cv-10509, 2014 WL 1515266, at *7 (D. Mass. Apr. 15, 2014) (citing *Lally v. Volkswagen Aktiengesellschaft*, 45 Mass. App.Ct. 317, 698 N.E.2d 28, 43 (1998)). Warranty liability claims can brought based on either a design defect or a failure to warn. *Haglund v. Philip Morris, Inc.,* 446 Mass. 741, 847 N.E.2d 315, 322 (2006). When a product that is "defective and unreasonably dangerous," for the "[o]rdinary purposes" for which it is "fit" causes injury, the warranty is breached. *Colter v. Barber–Greene Co.,* 403 Mass. 50, 62, 525 N.E.2d 1305 (1988). "Ordinary purposes" means a product's intended and foreseeable uses. *Back v. Wickes Corp., supra* at 640, 378 N.E.2d 964. "Fitness" is a question of degree that primarily, although not exclusively, concerns reasonable consumer expectations. *Id.* Both of these concepts require the manufacturer to look to the environment that the product is used. *Id.* The cornerstone of the duty of warranty of merchantability "is the anticipation of foreseeable uses." *Cigna Ins. Co. v. Oy Saunatec, Ltd.,* 241 F.3d 1, 16 (1st Cir. 2001).

Plaintiffs' Second Amended Complaint does not state any of the elements under a breach of implied warranty claim. Plaintiffs do not provide any factual support stating how the subject machine was defective or unreasonably dangerous for the intended use, that Plaintiff Laguna was using the Subject Machine in the way that it was intended, nor that the defect or unreasonably dangerous condition was the legal cause of Plaintiff Laguna's injuries. Plaintiffs again just state in a conclusory manner that the Subject Machine and its warnings and instructions were

13

defective. Second Amended Complaint, ¶ 29, 44. Further, Plaintiffs have not distinctly stated which theory of breach of implied warranty they are alleging. However, Plaintiff fails to state a claim under both a breach of implied warranty based on a design defect and defective warnings.

### A. Plaintiffs Fail to State a Claim of Breach of Implied Warranty Based on Design Defect

Under a design liability warranty theory, plaintiff must prove that, at the time of injury, plaintiff was "using the product in a manner that the defendant seller, manufacturer, or distributor reasonably could have foreseen." *Allen v. Chance Mfg. Co.,* 398 Mass. 32, 34 (1986). The inquiry is focused on the product's features rather than the manufacturer's conduct. *Id.* at 747. The product's adequacy requires analysis of factors such as "the gravity of the danger posed by the challenged design, the likelihood that such danger would occur, the mechanical feasibility of a safer alternative design, the financial cost of an improved design, and the adverse consequences to the product and to the consumer that would result from an alternative design." *Id.*

Here, Plaintiffs cannot state a claim for breach of implied warranty based on a design defect because Plaintiffs have not stated any defect or unreasonably dangerous condition of the Subject Machine. In addition, Plaintiffs have not provided any facts to support allegations that Plaintiff Laguna was using the Subject Machine that was reasonably foreseeable. Plaintiffs have failed to state a claim that rises above speculation because the Second Amended Complaint only states general conclusory statements.

### B. Plaintiffs' Fail to State a Claim of Breach of Implied Warranty Based on Defective Warnings

A breach of implied warranty based on defective warnings shares all elements with the negligent failure to warn claim. Specifically,

> [t]he Supreme Judicial Court has effectively collapsed the two standards for negligence and breach of warranty where the plaintiffs' allegations are based upon a failure to warn, determining that "negligent failure to warn and failure to warn under breach of warranty are to be judged by the same standard: the reasonableness of the defendant's actions in the circumstances.

*Hoffman v. Houghton Chem. Corp.*, 751 N.E.2d 848, 859 (Mass. 2001)). Because the Second Amended Complaint fails to state a claim for negligent failure to warn, the claim for breach of the implied warranty based on defective warnings fails as well.

VI.   **Plaintiffs' Fail to State a Claim for a Violation of M.G.L. Chapter 93A**

"[N]either the Massachusetts legislature nor the Supreme Judicial Court has gone so far as to find that all breaches of warranties are inherently deceptive or unfair." *Sharp v. Hylas Yachts, LLC*, 872 F.3d 31, 52 (1st Cir. 2017); *Maillet v. ATF-Davidson Co.*, 552 N.E.2d 95, 100 (1990). An "unfair" act is "immoral, unethical, oppressive, or unscrupulous." *Linkage Corp. v. Trs. of Bos. Univ.,* 425 Mass. 1, 679 N.E.2d 191, 209 (1997) (quoting *PMP Assocs., Inc. v. Globe Newspaper Co.*, 366 Mass. 593, 321 N.E.2d 915, 917 (1975)). A "deceptive" act "has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted." *Aspinall v. Philip Morris Cos., Inc.,* 442 Mass. 381, 813 N.E.2d 476, 488 (2004). A deceptive act "need not be totally false" to be actionable; it "may consist of a half truth, or even may be true as a literal matter, but still create an over-all misleading impression through failure to disclose material information." *Id*. at 487.

Here, Plaintiffs' claim for a violation of M.G.L. Chapter 94A fails for two reasons. First, Plaintiffs did not meet the procedural requirements of this provision. M.G.L. Chapter 93A § 9(3) provides a clear notice requirement to send the defendant "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered" before filing a 93A claim. Defendants Ermak USA and Ermaksan

have not received this written demand prior to or after the original complaint and the Second Amended Complaint was filed. Second, Plaintiffs fail to allege ay of the elements of the M.G.L. Chapter 93A violation. Plaintiffs do not state that the alleged negligence or breach of warranty was unfair or deceptive. In addition, Plaintiffs cannot provide any facts to support its claim of a violation of M.G.L. Chapter 93A. Rather, Plaintiffs only state that Defendants "implied that [the Subject Machine] is safe to be used by employees." Second Amended Complaint, ¶ 35, 47. This is another general conclusory statement that does not provide a sufficient claim for a M.G.L. Chapter 93A violation.

### VII. Plaintiffs' Fail to Properly State a Claim of Loss of Consortium

In Massachusetts, either spouse has a "claim for loss of consortium shown to arise from personal injury of the other spouse caused by negligence of a third person." *Diaz v. Eli Lilly & Co.*, 302 N.E.2d 555, 564 (1973). Plaintiffs can recover on a loss of consortium claim by showing a "loss of companionship, affection and sexual enjoyment of one's spouse" due to the tortious or negligent actions of a third party. *Agis v. Howard Johnson Co.*, 355 N.E.2d 315, 321 (1976).

However, this claim should be dismissed since Plaintiffs do not include any facts as to the alleged loss of consortium. Plaintiffs simply state that the Plaintiffs were married "at all times relevant to the lawsuit" and "as a direct result of this incident, involving the actions, and/or omissions of the Defendants… the Plaintiff Margarita Lopez, lost the care, comfort, income, society, and consortium of her husband, Ivan Laguna." Second Amended Complaint, ¶ 97-98. This is a generalized conclusory statement with no specificity regarding any damages to Plaintiff. Indeed, Plaintiffs have failed to include a single fact explaining how Plaintiff Margarita Lopez has suffered loss of consortium with her husband or to explain the relationship with the

Defendants. Furthermore, loss of consortium claims require the third party action to be either tortious or negligent. In this case, the Complaint fails to state the underlying claim of Defendants' negligence which bars this claim for loss of consortium. Thus, Plaintiffs have not provided sufficient facts to raise a right to relief above the speculative level for a claim for loss of consortium.

## VIII.   Conclusion

For the foregoing reasons, Defendants Ermak USA and Ermaksan requests that the Court dismiss Plaintiffs' Second Amended Complaint in its entirety, with prejudice.

Respectfully Submitted,

/s/ Stephen C. Bazarian
Stephen C. Bazarian BBO# 553148
Dalton & Finegold LLLP
34 Essex Street
Andover, Massachusets 01810
(P) 078-296-4755
sbazarian@dfllp.com

Sean Sharp (pro hac vice)
Serah James (pro hac vice)
Atom Law Group, LLC
770 N. LaSalle Dr., Suite 700
Chicago, Illinois, 60654
(P) 312-493-8000
(F) 312-943-4984
ssharp@atom.law
sjames@atom.law

## CERTIFICATION PURSUANT TO LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(2), the undersigned certifies that counsel for Ermaksan Turkey and Ermak USA conferred with counsel for plaintiffs that on September 7, 2023, counsel of record indicated their opposition to the relief sought in this motion.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on September, 7 2023.

/s/ Serah James
Serah James