UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IVAN LAGUNA, and<br>MARGARITA LOPEZ<br>    Plaintiffs<br><br>v.<br><br>LAZER SAFE, PTY, LTD,<br>FIESSLER ELECTRONIK GmbH & CO., KG.,<br>ERMAK USA, INC.,<br>ERMAKSAN TURKEY, aka<br>ERMAKSAN  MAKINA SANAYI VE TICARET A.S., and<br>JOHN DOE DISTRIBUTOR<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C.A. No. 3:23-CV-30016

## SECOND AMENDED COMPLAINT WITH JURY CLAIM

### Parties

1.  The Plaintiff, Ivan Laguna is an individual who resides at 173 Elm Street, West
    Springfield, Hampden County, Massachusetts.

2.  The Plaintiff, Margarita Lopez, is married to the Plaintiff Ivan Laguna, and she resides at
    78 Lincoln Street, West Springfield, Hampden County, Massachusetts.

3.  Lazer Safe, PTY, LTD ("Lazer"), is a foreign corporation, with its principal place of
    business and manufacturing facility at 27 Action Road, Malaga WA 6090, Australia.

4.  Fiessler Electronik GmbH & Co., KG ("Fiessler") is a foreign corporation, with its
    principal place of business and manufacturing facility at Buchenteich 14, D-73773,
    Aichwald, Germany.

Exhibit A

5. Defendant Ermak USA, Inc. ("Ermak USA") is an Illinois corporation with its principal place of business at 2860 River Road, Suite 145. Des Plaines, Cook County, Illinois.

6. Defendant Ermaksan Turkey ("ERMAKSAN"), also known to operate under the brand name, "ERMAKSAN", also known as "ERMAKSAN MAKINA SANAYI VE TICARET A.S.," is a Turkish corporation with its principal place of business and manufacturing facility at, Organize Sanayi Bolgesi, Lacivert Cad. No: 6 16065, Nilufer, Bursa, Turkey.

7. Defendant John Doe Distributor ("JDD") is the currently unidentified distributor and seller of the Subject Machine (see paragraph 10, infra, which is incorporated by reference).

**Jurisdiction and Venue**

8. This Honorable Court has personal jurisdiction over Defendants, as they actively conducted business in Massachusetts at all times relevant to this action.

9. This Honorable Court has subject matter jurisdiction pursuant to 28 U.S.C., § 1332 because the Plaintiff and Defendants are citizens of different states and the Plaintiff seeks damages in excess of $75,000.00.

10. Venue is proper in this district pursuant to 28 U.S.C., §1391(b)(1) as the Plaintiff resides in Massachusetts and 28 U.S.C., § 1391(b)(2) because the accident occurred in Holyoke, Massachusetts.

**Facts**

11. Defendant Ermak U.S.A. was the designer, manufacturer, tester, importer, supplier and/or distributor of a press brake machine and its controls: Type; CNCSAP 12X220; Model: 2007; Machine No.; SN20071136 (hereinafter the "Subject Machine"), acting in the course of business.

2

12. Defendant Ermaksan was the designer, manufacturer, tester, importer, supplier and/or distributor of the Subject Machine and its controls, acting in the course of business.

13. Defendant Lazer was a component designer, manufacturer, and installer, of the safety light curtain system, and control system, incorporated into the Subject Machine (hereinafter "the components") , acting in the course of business.

14. Defendant Fiessler was a component manufacturer, designer, and installer of the safety light/laser curtain system, and control system, incorporated into the Subject Machine (hereinafter "the components"), acting in the course of business.

15. Defendant JDD owned, sold, and/or distributed the Subject Machine.

16. The Subject Machine, its components and its controls were designed to bend metal products.

17. The Subject Machine, its components, and its controls, were designed, manufactured, tested, sold and installed by the Defendants with pinch points, known by the Defendants to present a constant risk of injury to the hands and fingers of the operators of the Subject Machine.

18. The Subject Machine components, and their controls, were designed to stop the Subject Machine, when the operator's hands or body entered the pinch point of the Subject Machine.

19. If the Subject Machine components, and their controls, had been reasonably and properly designed, installed, maintained, and/or operating, the Subject Machine components, and their controls, would have prevented the Plaintiff's injuries by stopping the Subject Machine before it crushed and cut the Plaintiff's fingers and hands, causing the amputation of eight of the Plaintiff's fingers.

20. Before September 29, 2020, Defendant JDD, Defendant Ermak USA, and Ermaksan, designed, manufactured, tested, imported, and/or distributed, supplied, and/or sold, the Subject Machine, its components, and its controls, to International Container Company, LLC or a related entity.

21. Before September 29, 2020, Defendant JDD, Defendant Lazer and/or Defendant Fiessler, designed, distributed, supplied, tested, imported, installed and/or sold the components, and their controls, to Defendants Ermaksan and/or Ermak USA and/or International Container Company, LLC, or a related entity.

22. On or about September 29, 2020, the Plaintiff, while working in the course of business for his employer International Container Company, LLC operated the Subject Machine, its components, and its controls, with due care when the machine injured him.

## COUNT I

### (Negligence against Ermak USA)

23. The Plaintiff realleges and repeats each and every allegation contained in paragraphs 1-21 and incorporates each as if fully set forth herein.

24. This count is for negligence and is brought by the Plaintiff against the Defendant Ermak USA.

25. The Defendant, Ermak USA, was negligent with respect to the design, manufacturing, testing, inspecting, distributing and selling the Subject Machine, its components, and its controls, and was negligent with respect to equipping the Subject Machine with inadequate safeguards, controls, warnings and/or instructions.

26. As a direct and proximate result of the Defendant, Ermak USA's negligence, the Plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish

of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work, will lose time from work in the future; and his ability to engage in normal and usual activities has been adversely affected.

WHEREFORE, the Plaintiff, Ivan Laguna, demands judgment against the Defendant Ermak USA, in an amount sufficient to compensate him for his losses and damages, together with interest and costs.

## COUNT II

### (Breach of Implied Warranty against Ermak USA)

27. The Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 25 and incorporates each as if fully set forth herein.

28. This Count is for Breach of Implied Warranty and is brought by the Plaintiff against the Defendant, Ermak USA.

29. The Defendant, Ermak USA, impliedly warranted to the Plaintiff that the Subject Machine, its components, and its controls, were merchantable, safe, and fit for ordinary purposes. The Defendant, Ermak USA, is a merchant with respect to goods of the kind involved in the accident. The Subject Machine, component parts, and controls of the Subject Machine and the product warnings and instructions were defective, and therefore the Subject Machine was not, in fact, merchantable, safe and fit as warranted by the Defendant, Ermak USA. The Defendant, Ermak USA, therefore breached these warranties to the Plaintiff.

30. As a direct and proximate result of the Defendant, Ermak USA's breaches of warranties, the Plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred

medical expenses, lost time from work, will lose time from work in the future; and his ability to engage in normal and usual activities has been adversely affected.

WHEREFORE, the Plaintiff Ivan Laguna, demands judgment against the Defendant Ermak USA, in an amount sufficient to compensate him for his losses and damages, together with interest and costs.

## COUNT III

### (M.G.L. ch.93A Violation against Ermak USA)

31. The Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 29 of this complaint.

32. Plaintiff was a foreseeable user and operator of the Subject Machine, its components, and its controls, in the course of business.

33. The Defendant Ermak USA was a merchant, manufacturer, designer, tester, distributer, and or retailer of the Subject Machine, its components, and its controls, in the course of business.

34. The Defendant Ermak USA put the Subject Machine, its components, and its controls, into the stream of commerce with the intention to sell to a business such as the Plaintiff's employer, in the course of business.

35. The Defendant Ermak USA put the Subject Machine, its components, and its controls, in the stream of commerce and implied that is it is safe to be used by employees of businesses such as the Plaintiff's employer.

36. The Plaintiff reasonably believed the Subject Machine, its components, and its controls, were safe to be used in the course of business, and while he was operating the Subject

Machine, and its controls, the Plaintiff was caused severe injuries and damages due to a defect in the Subject Machine, and its controls.

37. The Defendant Ermak USA violated M.G.L. ch. 93A when the Subject Machine, its components, and its controls, injured the Plaintiff in the ordinary course of business, and foreseeable use of the Subject Machine, its components, and its controls.

WHEREFORE, the Plaintiff is entitled to multiple damages and attorneys fees and costs pursuant to M.G.L. ch. 93A.

## COUNT IV

### (Negligence against Ermaksan)

38. The Plaintiff realleges and repeats each and every allegation contained in paragraphs 1-34 and incorporates each as if fully set forth herein.

39. The count is for negligence and is brought by the Plaintiff against the Defendant, Ermaksan.

40. The Defendant, Ermaksan, was negligent with respect to the designing, manufacturing, testing, inspecting, distributing and selling the Subject Machine, its components, and its controls, and was negligent with respect to equipping the Subject Machine with inadequate safeguards, controls, warnings and/or instructions.

41. As the direct and proximate result of the Defendant, Ermaksan's negligence, the Plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work, will lose time from work in the future; and his ability to engage in normal and usual activities has been adversely affected.

WHEREFORE, the Plaintiff Ivan Laguna, demands judgment against the Defendant Ermaksan, in an amount sufficient to compensate him for his losses and damages, together with interest and costs.

## COUNT V

### (Breach of Implied Warranty against Ermaksan)

42. The Plaintiff realleges and repeats each and every allegation contained in paragraphs 1-38 and incorporates each as if fully set forth herein.

43. This Count is for Breach of Implied Warranty and is brought by the Plaintiff against the Defendant Ermaksan.

44. The Defendant, Ermaksan, impliedly warranted to the Plaintiff that the Subject Machine, its controls, and its component parts, were merchantable, safe and fit for ordinary purposes.  The Defendant, Ermaksan, is a merchant with respect to the goods of the kind involved in the accident.  The Subject Machine, its controls, and component parts of the Subject Machine and the product warnings and instructions were defective, and therefore the product was not, in fact, merchantable, safe and fit as warranted by the Defendant, Ermaksan.  The Defendant, Ermaksan, therefore breached these warranties to the Plaintiff.

45. As the direct and proximate result of the Defendant, Ermaksan's breaches of warranties, the Plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work, will lose time from work in the future; and his ability to engage in normal and usual activities has been adversely affected.

WHEREFORE, the Plaintiff Ivan Laguna, demands judgment against the Defendant Ermaksan, in an amount sufficient to compensate him for his losses and damages, together with interest and costs.

## COUNT VI

### (M.G.L. ch.93A Violation against Ermaksan)

43. The Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 42 of this complaint.

44. The Plaintiff was a foreseeable user and operator of the Subject Machine, and its controls, in the course of business.

45. The Defendant Ermaksan was a merchant, manufacturer, designer, tester, distributer, and or retailer of the Subject Machine, its components, and its controls, in the course of business.

46. The Defendant Ermaksan put the Subject Machine, its components, and its controls, into the stream of commerce with the intention to sell to a business such as the Plaintiff's employer, in the course of business.

47. The Defendant Ermaksan put the Subject Machine, its components, and its controls, in the stream of commerce and implied that is it is safe to be used by employees of businesses such as the Plaintiff's employer.

48. The Plaintiff reasonably believed the Subject Machine, its components, and its controls, were safe to be used in the course of business, and while he was operating the Subject Machine, its components, and its controls, the Plaintiff was caused severe injuries and damages due to a defect in the Subject Machine, and its controls.

49. The Defendant Ermaksan violated M.G.L. ch. 93A when the Subject Machine, its components, and its controls, injured the Plaintiff in the ordinary course of business, and during the foreseeable use of the Subject Machine, and its controls.

WHEREFORE, the Plaintiff is entitled to multiple damages and attorneys' fees and costs pursuant to M.G.L. ch. 93A.

## COUNT VII

### (Negligence against Lazer)

50. The Plaintiff realleges and repeats each and every allegation contained in paragraphs 1-49 and incorporates each as if fully set forth herein.

51. This count is for negligence and is brought by the Plaintiff against the Defendant Lazer.

52. The Defendant, Lazer, was negligent with respect to the designing, inspecting, installing, testing, maintaining, distributing and selling the Subject Machine components, and their controls, and was negligent with respect to equipping the Subject Machine with inadequate light curtain safety devices, controls, safeguards, warnings and/or instructions.

53. As a direct and proximate result of the Defendant Lazer's negligence, the Plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work, will lose time from work in the future; and his ability to engage in normal and usual activities has been adversely affected.

WHEREFORE, the Plaintiff, Ivan Laguna, demands judgment against the Defendant Lazer, in an amount sufficient to compensate him for his losses and damages, together with interest and costs.

10

## COUNT VIII

### (Breach of Implied Warranty against Lazer)

54. The Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 53 and incorporates each as if fully set forth herein.

55. This Count is for Breach of Implied Warranty and is brought by the Plaintiff against the Defendant, Lazer.

56. The Defendant Lazer, impliedly warranted to the Plaintiff that the Subject Machine, its controls, and its component parts were merchantable, safe, and fit for ordinary purposes. The Defendant, Lazer, is a merchant with respect to goods of the kind involved in the accident. The Subject Machine, its controls, and/or the component parts of the Subject Machine, and the product warnings and instructions were defective, and therefore the Subject Machine, its components, and its controls, were not, in fact, merchantable, safe and fit as warranted by the Defendant, Lazer. The Defendant Lazer, therefore, breached these warranties to the Plaintiff.

57. As a direct and proximate result of the Defendant, Lazer's breaches of warranties, the Plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work, will lose time from work in the future; and his ability to engage in normal and usual activities has been adversely affected.

WHEREFORE, the Plaintiff Ivan Laguna, demands judgment against the Defendant Lazer, in an amount sufficient to compensate him for his losses and damages, together with interest and costs.

## COUNT IX

### (M.G.L. ch.93A  Violation against Lazer)

58.  The Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 57 of this complaint.

59.  The Plaintiff was a foreseeable user and operator of the Subject Machine, its components, and its controls, in the course of business.

60.  The Defendant Lazer was a merchant, manufacturer, designer, tester, distributer, and or retailer of the Subject Machine, its components, and its controls, in the course of business.

61.  The Defendant Lazer put the Subject Machine, its components, and its controls, into the stream of commerce with the intention to sell to a business such as the Plaintiff's employer, in the course of business.

62.  The Defendant Lazer put the Subject Machine, its components, and its controls, in the stream of commerce and implied that is it is safe to be used by employees of businesses such as the Plaintiff's employer.

63.  The Plaintiff reasonably believed the Subject Machine, its components, and its controls, were safe to be used in the course of business, and while he was operating the Subject Machine, its components, and its controls, the Plaintiff was caused severe injuries and damages due to a defect in the Subject Machine, its components, and its controls.

76.  The Defendant Lazer violated M.G.L. ch. 93A when the Subject Machine, its components, and its controls, injured the Plaintiff in the ordinary course of business, and during the foreseeable use of the Subject Machine, its components, and its controls.

WHEREFORE, the Plaintiff is entitled to multiple damages and attorneys' fees and costs pursuant to M.G.L. ch. 93A.

## COUNT X

### (Negligence against Fiessler)

64. The Plaintiff realleges and repeats each and every allegation contained in paragraphs 1-64 and incorporates each as if fully set forth herein.

65. This count is for negligence and is brought by the Plaintiff against the Defendant Fiessler.

66. The Defendant, Fiessler was negligent with respect to the designing, inspecting, installing, testing, maintaining, distributing and selling the Subject Machine components, and was negligent with respect to equipping the Subject Machine with inadequate light curtain safety devices, safeguards, warnings and/or instructions.

67. As a direct and proximate result of the Defendant Fiessler's negligence, the Plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work, will lose time from work in the future; and his ability to engage in normal and usual activities has been adversely affected.

WHEREFORE, the Plaintiff, Ivan Laguna, demands judgment against the Defendant Fiessler, in an amount sufficient to compensate him for his losses and damages, together with interest and costs.

## COUNT XI

### (Breach of Implied Warranty against Fiessler)

68. The Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 68 and incorporates each as if fully set forth herein.

69. This Count is for Breach of Implied Warranty and is brought by the Plaintiff against the Defendant, Fiessler.

70. The Defendant Fiessler, impliedly warranted to the Plaintiff that the Subject Machine and its components, and their controls, were merchantable, safe, and fit for ordinary purposes. The Defendant, Fiessler, is a merchant with respect to goods of the kind involved in the accident. The Subject Machine, its components, and/or its controls, and the product warnings and instructions were defective, and therefore the Subject Machine, its components, and its controls, were not, in fact, merchantable, safe and fit as warranted by the Defendant, Fiessler. The Defendant Fiessler, therefore, breached these warranties to the Plaintiff.

71. As a direct and proximate result of the Defendant, Fiessler's breaches of warranties, the Plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work, will lose time from work in the future; and his ability to engage in normal and usual activities has been adversely affected.

WHEREFORE, the Plaintiff Ivan Laguna, demands judgment against the Defendant Fiessler, in an amount sufficient to compensate him for his losses and damages, together with interest and costs.

## COUNT XII

### (M.G.L. ch.93A Violation against Fiessler)

73. The Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 72 of this complaint.

14

74. The Plaintiff was a foreseeable user and operator of the Subject Machine, its components, and its controls, in the course of business.

75. The Defendant Fiessler was a merchant, manufacturer, designer, tester, distributer, and or retailer of the Subject Machine, its components, and its controls, in the course of business.

77. The Defendant Fiessler put the Subject Machine, its components, and its controls, into the stream of commerce with the intention to sell to a business such as the Plaintiff's employer, in the course of business.

78. The Defendant Fiessler put the Subject Machine, its components, and its controls, in the stream of commerce and implied that is it is safe to be used by employees of businesses such as the Plaintiff's employer.

79. The Plaintiff reasonably believed the Subject Machine, its components, and its controls, were safe to be used in the course of business, and while he was operating the Subject Machine, its components, and its controls, the Plaintiff was caused severe injuries and damages due to a defect in the Subject Machine, its components, and its controls.

80. The Defendant Fiessler violated M.G.L. ch. 93A when the Subject Machine, its components, and its controls, injured the Plaintiff in the ordinary course of business, and during the foreseeable use of the Subject Machine, its components, and its controls. WHEREFORE, the Plaintiff is entitled to multiple damages and attorneys' fees and costs pursuant to M.G.L. ch. 93A.

## **COUNT XIII**

**(Negligence against JDD)**

81. The Plaintiff realleges and repeats each and every allegation contained in paragraphs 1-80 and incorporates each as if fully set forth herein.

82. This count is for negligence and is brought by the Plaintiff against the Defendant JDD.

83. The Defendant, JDD was negligent with respect to the designing, inspecting, installing, testing, maintaining, distributing and selling the Subject Machine components, and was negligent with respect to equipping the Subject Machine with inadequate light curtain safety devices, safeguards, warnings and/or instructions.

84. As a direct and proximate result of the Defendant JDD's negligence, the Plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work, will lose time from work in the future; and his ability to engage in normal and usual activities has been adversely affected.

WHEREFORE, the Plaintiff, Ivan Laguna, demands judgment against the Defendant JDD, in an amount sufficient to compensate him for his losses and damages, together with interest and costs.

## COUNT XI

### (Breach of Implied Warranty against JDD)

85. The Plaintiff realleges and repeats each and every allegation contained in paragraphs 1 through 84 and incorporates each as if fully set forth herein.

86. This Count is for Breach of Implied Warranty and is brought by the Plaintiff against the Defendant, JDD.

87. The Defendant JDD, impliedly warranted to the Plaintiff that the Subject Machine and its components, and their controls, were merchantable, safe, and fit for ordinary purposes.

The Defendant, JDD, is a merchant with respect to goods of the kind involved in the accident. The Subject Machine, its components, and/or its controls, and the product warnings and instructions were defective, and therefore the Subject Machine, its components, and its controls, were not, in fact, merchantable, safe and fit as warranted by the Defendant, JDD. The Defendant JDD, therefore, breached these warranties to the Plaintiff.

88. As a direct and proximate result of the Defendant, JDD's breaches of warranties, the Plaintiff sustained severe and permanent physical injury, suffered great pain of body and anguish of mind, required extensive hospital and medical care and treatment, incurred medical expenses, lost time from work, will lose time from work in the future; and his ability to engage in normal and usual activities has been adversely affected.

WHEREFORE, the Plaintiff Ivan Laguna, demands judgment against the Defendant JDD, in an amount sufficient to compensate him for his losses and damages, together with interest and costs.

## COUNT XII

### (M.G.L. ch.93A  Violation against JDD)

89. The Plaintiff repeats and re-alleges the allegations contained in paragraphs 1 through 88 of this complaint.

90. The Plaintiff was a foreseeable user and operator of the Subject Machine, its components, and its controls, in the course of business.

91. The Defendant JDD was a merchant, manufacturer, designer, tester, distributer, and or retailer of the Subject Machine, its components, and its controls, in the course of business.

92. The Defendant JDD put the Subject Machine, its components, and its controls, into the stream of commerce with the intention to sell to a business such as the Plaintiff's employer, in the course of business.

93. The Defendant JDD put the Subject Machine, its components, and its controls, in the stream of commerce and implied that is it is safe to be used by employees of businesses such as the Plaintiff's employer.

94. The Plaintiff reasonably believed the Subject Machine, its components, and its controls, were safe to be used in the course of business, and while he was operating the Subject Machine, its components, and its controls, the Plaintiff was caused severe injuries and damages due to a defect in the Subject Machine, its components, and its controls.

95. The Defendant JDD violated M.G.L. ch. 93A when the Subject Machine, its components, and its controls, injured the Plaintiff in the ordinary course of business, and during the foreseeable use of the Subject Machine, its components, and its controls.  WHEREFORE, the Plaintiff is entitled to multiple damages and attorneys' fees and costs pursuant to M.G.L. ch. 93A.

## COUNT XII

### (Margarita Lopez loss of consortium against all Defendants)

96. Paragraphs 1-95 are adopted by reference.

97. At all times relevant to this lawsuit, Plaintiff Ivan Laguna was legally married to Plaintiff Margarita Lopez.

98. As a direct and proximate result of this incident, involving the actions, and/or omissions of the Defendants, Ermak USA, Ermaksen, Lazer, Fiessler, and JDD, the Plaintiff

Margarita Lopez,  lost the care, comfort, income, society, and consortium of her husband, Ivan Laguna.

WHEREFORE, the Plaintiff Margarita Lopez, demands judgment against all  Defendants in an amount sufficient to compensate her for her losses and damages, together with interest and costs.

THE PLAINTIFF CLAIMS A TRIAL BY JURY AS TO ALL ISSUES

IVAN LAGUNA and
MARGARITA LOPEZ,
By their attorneys,

/s/ Michael J. Mascis

Richard J. Sullivan, Esq.
BBO# 554085
Michael J. Mascis, Esq.
BBO# 541772
SULLIVAN & SULLIVAN, LLP
83 Walnut Street
Wellesley, MA  02481
(781) 263-9400
rsullivan@sullivanllp.com
mmascis@sullivanllp.com

Dated: April 7, 2023

# <u>Employee Interview Sheet</u>

Today's Date: _12/30/2020_      Time: _1:00 PM_

Name: _Ivan Laguna_      Employer: _I CC_

Home Address: _78 Lincoln St_

City: _W. Springfield_ State: _MA_ Zip: _01089_ Phone: _413-222-8341 (c)(p)_

Trade: _____      Position: _Laborer_

Years Experience: _2 w/o_   How long have you been with this company: _2½ weeks_

Union? ___ Yes   ✓ No
If yes, what union: _____      Local#: _____
Have you ever had any safety training? ___ Yes   ✓ No
If yes, what kind: _____
From whom? _____
When? _____
Do you ever have safety meetings? ___ Yes   ✓ No
If yes, how often? _____   Who conducts the meeting? _____
What were you working on today? _Bending Metal_
How long have you been working on that task? _Since 230 PM_
Who directed you to do that work? _Efrain_

## <u>NOTES:</u>

_See attached note pages_

I understand that to the extent permissible by law, my identity as the provider of this statement will be held in confidence. If I am called to testify in a court proceeding, my identity as the statement giver will be disclosed in accordance with applicable court rules. The content of this statement and my identity may be disclosed to other federal law enforcement agencies in accordance with Department of Labor rules and procedures. This statement may be subject to disclosure in accordance with applicable statute(s) and agency policy.

I have read and had the opportunity to correct this statement and these facts are true and correct to the best of my knowledge and belief. Public Law 91-596, Paragraph 17(g) makes it a criminal offense to knowingly make a false statement of misrepresentation in this statement.

_____
Signature
_Signature by Proxy due to injuries,
EE Not able to use pen._

Brett S Fortin
Taken By

Exhibit
B

pg. 1 of

I have used the machine before to make 2-300 pieces of angle.

I don't remember who told me how to use the machine. But I do remember it took less than a minute. They said put piece into machine at this line and hit the button. I have been told to keep hands clear of machine but didn't need to be common sense.

The machine has jammed before. I called one of the guys to help. He came out with a long metal bar and hit side of machine, and said it gets stuck sometimes that is how you fix it. I don't know if management knew the machine sticks.

The foot pedal in the picture is not the same pedal on machine day of accident. Also the grey boxes on the machine (laser eye) they were green, smaller and I was told didn't work.

I don't know anything about lock out tag out. I have recieved no training.

Day of accident I was scraping paint off rehab dumpsters by paint booth. After lunch, appox. 2:00 pm told to make more angle pieces. I noticed a piece of flat stock on floor by machine base. I stepped on it. It slid and I slipped. I reached out toward the machine to catch myself. Both hands were on lower die plate. The stock moved towards foot pedal and hit the button. I didn't know machine was coming down. It pinched my fingers and got stuck. I screamed for a few minutes and Flacco came and hit a button on machine. To let me go.

pg. 2 of

- I was taken to the hospital.

- Other employees told me via text that people were working on machine next day. Cleaning, changing parts, moving benches. I was never told who was doing this, just people.

- Supervisor doesn't walk the floor the whole time. They have work assignments as well.

**U.S. Department of Labor**     Occupational Safety and Health Administration
1441 Main Street
Room 550
Springfield, MA 01103



02/04/2021

International Container Co. LLC
and its successors
110 N Bridge St
Holyoke, MA 01040

Dear Employer:

Enclosed you will find citations for violations of the Occupational Safety and Health Act of 1970 (the Act) which may have accompanying proposed penalties. Also enclosed is a booklet entitled, "Employer Rights and Responsibilities Following an OSHA Inspection", (OSHA 3000-04R) revised 2018, which explains your rights and responsibilities under the Act. If you have any questions about the enclosed citations and penalties, I would welcome further discussions in person or by telephone. Please contact me at (413) 785-0123.

You will note on page 6 of the booklet that, for violations which you do not contest, you must (1) notify this office promptly by letter that you have taken appropriate corrective action within the time set forth on the citation; and (2) pay any penalties assessed. Please inform me of the abatement steps you have taken and of their dates together with adequate supporting documentation; e.g., drawings or photographs of corrected conditions, purchase/work orders related to abatement actions, air sampling results. This information will allow us to close the case.

As indicated on page 3 of the booklet, you may request an informal conference with me during the 15-working-day notice of contest period. During such an informal conference you may present any evidence or views which you believe would support an adjustment to the citation or the penalty.

If you are considering a request for an informal conference to discuss any issues related to this Citation and Notification of Penalty, you must take care to schedule it early enough to allow time to contest after the informal conference, should you decide to do so. Please keep in mind that a written letter of intent to contest must be submitted to the Area Director within 15 working days of your receipt of the citation. The running of this contest period is not interrupted by an informal conference.

If you decide to request an informal conference, please complete the attached notice at the bottom of this letter and post it next to the Citations as soon as the time, date and the place of the informal conference have been determined. Be sure to bring to the conference with you any and all supporting documentation of existing conditions as well as of any abatement steps taken thus far. If conditions warrant, we can enter into an informal settlement agreement which amicably resolves this matter without litigation or contest.

Exhibit
C

You should be aware that OSHA publishes information on its inspection and citation activity on the Internet under the provisions of Electronic Freedom of Information Act. The information related to these alleged violations will be posted when our system indicates that you have received this citation. You are encouraged to review the information concerning your establishment at www.osha.gov. If you have any dispute with the accuracy of the information displayed, please contact this office.

Sincerely,

Mary E. Hoye
Digitally signed by Mary E. Hoye
Date: 2021.02.04 12:19:57 -06'00'

**Mary E Hoye**
Area Director

Enclosures

**U.S. Department of Labor**
Occupational Safety and Health Administration
1441 Main Street
Room 550
Springfield, MA 01103



# Citation and Notification of Penalty

**To:**
International Container Co. LLC /
and its successors
110 N Bridge St,
Holyoke, MA 01040

**Inspection Number:** 1496123
**Inspection Date(s):** 10/07/2020-01/20/2021
**Issuance Date:**     02/04/2021

**Inspection Site:**
110 N Bridge St,
Holyoke, MA 01040

*The violation(s) described in this Citation and
Notification of Penalty is (are) alleged to have
occurred on or about the day(s) the inspection was
made unless otherwise indicated within the description
given below.*

This Citation and Notification of Penalty (this Citation) describes violations of the Occupational Safety and Health Act of 1970. The penalty(ies) listed herein is (are) based on these violations. You must abate the violations referred to in this Citation by the dates listed and pay the penalties proposed, unless within 15 working days (excluding weekends and Federal holidays) from your receipt of this Citation and Notification of Penalty **you either call to schedule an informal conference (see paragraph below) or** you mail a notice of contest to the U.S. Department of Labor Area Office at the address shown above. Please refer to the enclosed booklet (OSHA 3000) which outlines your rights and responsibilities and which should be read in conjunction with this form. Issuance of this Citation does not constitute a finding that a violation of the Act has occurred unless there is a failure to contest as provided for in the Act or, if contested, unless this Citation is affirmed by the Review Commission or a court.

**Posting -** The law requires that a copy of this Citation and Notification of Penalty be posted immediately in a prominent place at or near the location of the violation(s) cited herein, or, if it is not practicable because of the nature of the employer's operations, where it will be readily observable by all affected employees. This Citation must remain posted until the violation(s) cited herein has (have) been abated, or for 3 working days (excluding weekends and Federal holidays), whichever is longer.

**Informal Conference -** An informal conference is not required. However, if you wish to have such a conference you may request one with the Area Director during the 15 working day contest period by calling (413) 785-0123. During such an informal conference, you may present any evidence or views which you believe would support an adjustment to the citation(s) and/or penalty(ies).

If you are considering a request for an informal conference to discuss any issues related to this Citation and Notification of Penalty, you must take care to schedule it early enough to allow time to contest after the informal conference, should you decide to do so. Please keep in mind that a written letter of intent to contest must be submitted to the Area Director within 15 working days of your receipt of this Citation. The running of this contest period is not interrupted by an informal conference.

If you decide to request an informal conference, please complete, remove and post the Notice to Employees next to this Citation and Notification of Penalty as soon as the time, date, and place of the informal conference have been determined. Be sure to bring to the conference any and all supporting documentation of existing conditions as well as any abatement steps taken thus far. If conditions warrant, we can enter into an informal settlement agreement which amicably resolves this matter without litigation or contest.

**Right to Contest** – You have the right to contest this Citation and Notification of Penalty. You may contest all citation items or only individual items. You may also contest proposed penalties and/or abatement dates without contesting the underlying violations. <u>**Unless you inform the Area Director in writing that you intend to contest the citation(s) and/or proposed penalty(ies) within 15 working days after receipt, the citation(s) and the proposed penalty(ies) will become a final order of the Occupational Safety and Health Review Commission and may not be reviewed by any court or agency.**</u>

**Penalty Payment** – Penalties are due within 15 working days of receipt of this notification unless contested. (See the enclosed booklet and the additional information provided related to the Debt Collection Act of 1982.) Make your check or money order payable to "DOL-OSHA". Please indicate the Inspection Number on the remittance. You can also make your payment electronically at www.pay.gov. At the top of the pay.gov homepage, type "OSHA" in the Search field and select Search. From **OSHA Penalty Payment Form** search result, select Continue. The direct link is:

<u>https://www.pay.gov/paygov/forms/formInstance.html?agencyFormId=53090334</u>

You will be required to enter your inspection number when making the payment. Payments can be made by credit card or Automated Clearing House (ACH) using your banking information. Payments of $25,000 or more require a Transaction ID, and also must be paid using ACH. If you require a Transaction ID, please contact the OSHA Debt Collection Team at (202) 693-2170.

OSHA does not agree to any restrictions or conditions or endorsements put on any check, money order, or electronic payment for less than the full amount due, and will process the payments as if these restrictions or conditions do not exist.

**Notification of Corrective Action** – For each violation which you do not contest, you must provide *abatement certification* to the Area Director of the OSHA office issuing the citation and identified above. This abatement certification is to be provided by letter within 10 calendar days after each abatement date. Abatement certification includes the date and method of abatement. If the citation indicates that the violation was corrected during the inspection, no abatement certification is required for that item. The abatement certification letter must be posted at the location where the violation appeared and the corrective action took place or employees must otherwise be effectively informed about abatement activities. A sample abatement certification letter is enclosed with this Citation. In addition, where the citation indicates that *abatement documentation* is necessary, evidence of the purchase or repair of equipment, photographs or video, receipts, training records, etc., verifying that abatement has occurred is required to be provided to the Area Director.

**Employer Discrimination Unlawful** – The law prohibits discrimination by an employer against an

employee for filing a complaint or for exercising any rights under this Act. An employee who believes that he/she has been discriminated against may file a complaint no later than 30 days after the discrimination occurred with the U.S. Department of Labor Area Office at the address shown above.

**Employer Rights and Responsibilities** -- The enclosed booklet (OSHA 3000) outlines additional employer rights and responsibilities and should be read in conjunction with this notification.

**Notice to Employees** -- The law gives an employee or his/her representative the opportunity to object to any abatement date set for a violation if he/she believes the date to be unreasonable. The contest must be mailed to the U.S. Department of Labor Area Office at the address shown above and postmarked within 15 working days (excluding weekends and Federal holidays) of the receipt by the employer of this Citation and Notification of Penalty.

**Inspection Activity Data** -- You should be aware that OSHA publishes information on its inspection and citation activity on the Internet under the provisions of the Electronic Freedom of Information Act. The information related to these alleged violations will be posted when our system indicates that you have received this citation. You are encouraged to review the information concerning your establishment at www.osha.gov. If you have any dispute with the accuracy of the information displayed, please contact this office.

**U.S. Department of Labor**
Occupational Safety and Health Administration



# NOTICE TO EMPLOYEES OF INFORMAL CONFERENCE

An informal conference has been scheduled with OSHA to discuss the citation(s) issued on

02/04/2021. The conference will be held by telephone or at the OSHA office located at 1441

Main Street Room 550 Springfield, MA 01103 on _____ at

_____. Employees and/or representatives of employees have a right to attend an

informal conference.

## CERTIFICATION OF CORRECTIVE ACTION WORKSHEET

**Inspection Number: 1496123**

Company Name: International Container Co. LLC /
Inspection Site: 110 N Bridge St, Holyoke, MA 01040
Issuance Date: 02/04/2021

List the specific method of correction for each item on this citation in this package that does not read "Corrected During Inspection" and return to: **U.S. Department of Labor – Occupational Safety and Health Administration, 1441 Main Street Room 550 Springfield, MA 01103.**

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____
_____

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____
_____

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____
_____

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____
_____

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____
_____

Citation Number _____ and Item Number _____ was corrected on _____
By (Method of Abatement): _____
_____

I certify that the information contained in this document is accurate and that the affected employees and their representatives have been informed of the abatement.

_____          _____
Signature                                         Date

_____          _____
Typed or Printed Name                             Title

**NOTE: 29 USC 666(g)** whoever knowingly makes any false statements, representation or certification in any application, record, plan or other documents filed or required to be maintained pursuant to the Act shall, upon conviction, be punished by a fine of not more than $10,000 or by imprisonment of not more than 6 months or both.

**POSTING:** A copy of completed Corrective Action Worksheet should be posted for employee review

**U.S. Department of Labor**
Occupational Safety and Health Administration

Inspection Number: 1496123
Inspection Date(s): 10/07/2020 - 01/20/2021
Issuance Date: 02/04/2021



**Citation and Notification of Penalty**

**Company Name: International Container Co. LLC**
**Inspection Site: 110 N Bridge St Holyoke, MA 01040**

---

Citation 1 Item 1     Type of Violation: **Serious**

29 CFR 1910.145(c)(2)(i): Caution signs were not used to warn against potential hazards or to caution against unsafe practices:

110 N Bridge St. Holyoke, MA. On or about September 29, 2020 the employer had not ensured that caution signs meeting American National Standard Z53.1-1967 were affixed to areas of a hydraulic brake that posed specific safety and health hazards to operators and other exposed employees. The caution signs affixed to the front of the brake were worn and not legible and the employer had not removed the defective safety signs and replaced them with signs that were legible to employees using the machine.

ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM.

Date By Which Violation Must be Abated:                        March 03, 2021
Proposed Penalty:                                              $6,827.00

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                  Page 6                      OSHA-2

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1496123
**Inspection Date(s):** 10/07/2020 - 01/20/2021
**Issuance Date:** 02/04/2021



### Citation and Notification of Penalty

**Company Name: International Container Co. LLC**
**Inspection Site: 110 N Bridge St Holyoke, MA 01040**

---

<u>Citation 1 Item 2</u>     Type of Violation: **Serious**

29 CFR 1910.147(c)(1): The employer did not establish a program consisting of an energy control procedure, employee training and periodic inspections to ensure that before any employee performed any servicing or maintenance on a machine or equipment where the unexpected energizing, startup or release of stored energy could occur and cause injury, the machine or equipment shall be isolated from the energy source and rendered inoperative:

110 N Bridge St. Holyoke, MA. On or about September 29, 2020 the employer had not established an energy control procedure which included the following program requirements. The procedures did not include a purpose of the procedure statement, statements addressing the specific sources of energy with each piece of equipment, statements relating to the specific location of areas to lock to isolate power and the establishment of periodic inspections for the procedure as required by 1910.147 Appendix A (non-voluntary).

ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:              March 03, 2021
Proposed Penalty:                                                        $7,510.00

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                    Page 7                                   OSHA-2

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1496123
**Inspection Date(s):** 10/07/2020 - 01/20/2021
**Issuance Date:** 02/04/2021



## Citation and Notification of Penalty

**Company Name:** International Container Co. LLC
**Inspection Site:** 110 N Bridge St Holyoke, MA  01040

---

Citation 1 Item 3     Type of Violation: **Serious**

29 CFR 1910.212(a)(1): One or more methods of machine guarding was not provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks:

110 N Bridge St. Holyoke, MA. On or about September 29, 2020 the employer had not provided one or more methods of guarding to prevent employees from getting any part of their body into the point of operation of an Ermak SPA 12 automatic brake machine exposing employees to amputations.

### ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:                        March 03, 2021
Proposed Penalty:                                                              $10,513.00

Mary E. Hoye  Digitally signed by Mary E. Hoye
Date: 2021.02.04 12:20:31 -05'00'

**Mary E Hoye**
Area Director

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

**U.S. Department of Labor**
Occupational Safety and Health Administration
1441 Main Street
Room 550
Springfield, MA 01103



# INVOICE /
# DEBT COLLECTION NOTICE

**Company Name: International Container Co. LLC /**
**Inspection Site: 110 N Bridge St, , Holyoke, MA 01040**
**Issuance Date: 02/04/2021**

## Summary of Penalties for Inspection Number:    1496123

| | |
|---|---:|
| Citation 1 Item 1, Serious | $6,827.00 |
| Citation 1 Item 2, Serious | $7,510.00 |
| Citation 1 Item 3, Serious | $10,513.00 |

| | |
|---|---:|
| **TOTAL PROPOSED PENALTIES:** | **$24,850.00** |

To avoid additional charges, please remit payment promptly to this Area Office for the total amount of the uncontested penalties summarized above. Make your check or money order payable to: "DOL-OSHA". Please indicate OSHA's Inspection Number (indicated above) on the remittance. You can also make your payment electronically at www.pay.gov. At the top of the pay.gov homepage, type "OSHA" in the Search field and select Search. From the **OSHA Penalty Payment Form** search result, select Continue. The direct link is: https://www.pay.gov/paygov/forms/formInstance.html?agencyFormId=53090334. You will be required to enter your inspection number when making the payment. Payments can be made by credit card or Automated Clearing House (ACH) using your banking information. Payments of $25,000 or more require a Transaction ID, and also must be paid using ACH. If you require a Transaction ID, please contact the OSHA Debt Collection Team at (202) 693-2170.

OSHA does not agree to any restrictions or conditions or endorsements put on any check, money order, or electronic payment for less than the full amount due, and will cash the check or money order as if these restrictions or conditions do not exist.

If a personal check is issued, it will be converted into an electronic fund transfer (EFT). This means that our bank will copy your check and use the account information on it to electronically debit your account for the amount of the check. The debit from your account will then usually occur within 24 hours and will be shown on your regular account statement. You will not receive your original check back. The bank will destroy your original check, but will keep a copy of it. If the EFT cannot be completed because of insufficient funds or closed account, the bank will attempt to make the transfer up to two times.

Pursuant to the Debt Collection Act of 1982 (Public Law 97-365) and regulations of the U.S. Department of Labor (29 CFR Part 20), the Occupational Safety and Health Administration is required to assess interest, delinquent charges, and administrative costs for the collection of delinquent penalty debts for violations of the Occupational Safety and Health Act.

**Interest**: Interest charges will be assessed at an annual rate determined by the Secretary of the Treasury on all penalty debt amounts not paid within one month (30 calendar days) of the date on which the debt amount becomes due and payable (penalty due date). The current interest rate is one percent (1%). Interest will accrue from the date on which the penalty amounts (as proposed or adjusted) become a final order of the Occupational Safety and Health Review Commission (that is, 15 working days from your receipt of the Citation and Notification of Penalty), unless you file a notice of contest. Interest charges will be waived if the full amount owed is paid within 30 calendar days of the final order.

**Delinquent Charges**: A debt is considered delinquent if it has not been paid within one month (30 calendar days) of the penalty due date or if a satisfactory payment arrangement has not been made. If the debt remains delinquent for more than 90 calendar days, a delinquent charge of six percent (6%) per annum will be assessed accruing from the date that the debt became delinquent.

**Administrative Costs**: Agencies of the Department of Labor are required to assess additional charges for the recovery of delinquent debts. These additional charges are administrative costs incurred by the Agency in its attempt to collect an unpaid debt. Administrative costs will be assessed for demand letters sent in an attempt to collect the unpaid debt.

Mary E. Hoye    Digitally signed by Mary E. Hoye
Date: 2021.02.04 12:20:48 -05'00'

_____        02/02/2021
                                        _____
**Mary E Hoye**                         Date
Area Director





Exhibit
D-2





Exhibit
D-4

10.28.2022



# DiNatale
DETECTIVE    AGENCY

20 McKenna Terrace. Suite 301
West Roxbury, MA  02132

Tel. (617) 553-8244
Fax (617) 553-8246
office@dinatale-detective.com
www.dinatale-detective.com

All Types of Investigations

John P. DiNatale
Richard H. DiNatale
Phillip J. DiNatale (1919-1987)
Evelyn M. DiNatale (1922-1983)
Karen Nasson (1963-2010)

**TO:**       Attorneys Richard Sullivan & Mike Mascis
**FROM:**   Richard H. DiNatale
**DATE:**    November 1, 2022
**RE:**       Ivan Laguna

On 10/28/22, the brake press machine was photographed at International Container Co, 110 N Bridge Street, Holyoke, MA during an inspection by Bob Holt. The photos have been uploaded to Dropbox and shared with your office. Hardcopies of the photos were printed and mailed to Bob Holt per his request.



Photo of the subject machine. Note: the table in front of the press brake is used to load large metal sheets into the machine. The table was not present at the time of the accident.

Exhibit E

Attorneys Richard Sullivan & Mike Mascis
Ivan Laguna – Page 2
November 1, 2022

The subject machine is an Ermak CNC SAP 12 x 220, manufactured in Turkey in 2007.



Plaque on the machine which includes its serial number, SN20071136.

The client was present for a portion of the inspection. He indicated the foot pedals (used to operate the machine) present during the inspection were different than the pedals used at the time of his accident. Laguna further stated the table in front of the machine that can be seen in many of the photos was also not present or near the machine at the time of his accident.

As can be seen in the photo above, the machine also had several decals for AJ Machinery Company Inc. Internet searches indicate AJ Machinery Company Inc. was

Attorneys Richard Sullivan & Mike Mascis
Ivan Laguna – Page 3
November 1, 2022

formerly incorporated in Minnesota but is now dissolved (since 2014). It is unconfirmed at this time if AJ Machinery Co. Inc. was the original vendor of the machine. The two brothers from International Container Co. who were present during the inspection recalled that they purchased the subject press brake second-hand from a shop on Cape Cod, but they could not recall when or where.

Please advise if there is anything further.

Laguna-226-22#3.docx

## BILL OF SALE AND ASSIGNMENT #2

Cape Cod Fabrications, Inc., a Massachusetts corporation with a business address of 120 Bernard St. Jean Drive, East Falmouth, Massachusetts 02536 ("Seller"), in consideration of $65,000.00 receipt of which is hereby acknowledged, does hereby sell, convey, transfer, assign and set over to __ International Container Co. LLC__ ("Purchaser"), all of Seller's right, title and interest in and to the equipment and items listed on Schedule 1 attached hereto and made a part hereof (collectively, the "Equipment").

Seller represents and warrants to Purchaser that Seller is the absolute owner of the Equipment, that the Equipment is conveyed free and clear of all liens, charges and encumbrances, and that Seller has full right, power and authority to sell said Equipment and to make this Bill of Sale and Assignment.

Secured Party hereby releases its security interest in and to the Personal Property described in the Bill of Sale annexed hereto as Schedule 1. The security interest of Secured Party continues in all other personal property of Debtor.

All materials and equipment are being sold "As Is". All sales are final, no returns or refunds.

IN WITNESS WHEREOF, Seller has executed this Bill of Sale and Assignment under seal as of the 23 day of March, 2012.

Cape Cod Fabrications, Inc.

By: _____
Name: Richard A. Corner
Title: Owner

---

**People's United Bank**

Reference 2007 Ermac CNC 12' Press Brake    Date 03/30/2012

**Cashier's Check**
**7270463**

45604-A136020

$*******65,000.00*******

Pay SIXTY FIVE THOUSAND   DOLLARS AND   ZERO   CENTS

*COMMUNITY BANK*

To the Order of _____

**CASHIER'S CHECK** 2007 Ermac BNC 12' Press Brake

Notice to Customers: The purchase of an indemnity bond may be required before this check will be replaced or refunded in the event it is lost, misplaced or stolen.

SU※: SU2007/136

Authorized Signature

Member FDIC  CX-002

Exhibit F

## Schedule 1 to Bill of Sale and Assignment #25

### List of Equipment

| | Description of Equipment | Serial No. | Value |
|---|---|---|---|
| 1 | 2007 Ermac CNC SAP 220 12' Press Brake 220 Ton Capacity | | $65,000.00 |

S/N : SN2007 1136

| | | |
|---|---|---|
| Sub Total | $ | 65,000.00 |
| MA Sales Tax @ 6.25% | $ | .00 |
| | | |
| Grand Total | $ | 65000.00 |

All materials and equipment are being sold "As Is".  All sales are final, no returns or refunds.

Received complete _____

Check# 7270463

**mmascis@sullivanllp.com**

| | |
|---|---|
| **From:** | Ken Searles <ksearles@internationalcontainerco.com> |
| **Sent:** | Tuesday, July 30, 2019 11:10 AM |
| **To:** | s.rodoplu@ermakusa.com; h.telci@ermakusa.com; i.karakaya@ermakusa.com; ufuk.kocael@ermakusa.com |
| **Cc:** | Cwilson; mmenard@internationalcontainerco.com |
| **Subject:** | Ermaksan Press Brake |
| **Attachments:** | IMG_0835.jpg; IMG_0836.jpg; IMG_0837.jpg |

Hi Ufuk, the corrupt file doesn't come on all the time and has gone away now. Now the rear gate open is on which is normal upon start up. But once you press the test button it clicks a relay on and the gate open message goes away and allows the machine to start up. We don't hear that relay clicking on anymore. I'm not sure which relay it is. This leads us to believe its a problem with the lazer guard in the rear. Please let me know your thoughts and where to begin.
Thank you very much for your quick response, Kenneth Searles

-----Original Message-----
From: "Ken Searles" <ksearles@internationalcontainerco.com>
Sent: Tuesday, July 30, 2019 11:00am
To: "Ksearles" <ksearles@internationalcontainerco.com>
Subject:

Sent from my iPhone


Exhibit
G

1

**mmascis@sullivanllp.com**

| | |
|---|---|
| **From:** | SENOL RODOPLU <s.rodoplu@ermakusa.com> |
| **Sent:** | Tuesday, October 15, 2019 1:02 PM |
| **To:** | Ken Searles; HULYA YILMAZ |
| **Cc:** | SERVICE; mmenard@internationalcontainerco.com; cwilson@internationalcontainerco.com; Joseph Searles; ILKER KARAKAYA |
| **Subject:** | Re: Ermaksan Press Brake |

Hi Ken,
I was able to receive quotation for light guard compatible with your machine with programs  loaded into it so you can simply install it on and start working with your machine.

It's cost is $8,750 for part and $800 for programming, total is coming out to $9,550 plus shipping.

Our spare part department is also trying to find another solution which would be cost effective parts for your machine which can be used instead.

As soon as they came up with other solution as an option I will let you know but for now I wanted to submit first option if you wanted to go with it without waiting.

Please let us know.

Senol Rodoplu
VP of Sales
ERMAKUSA
Cell: +1 630-512-7604

"Exellence in Fab Equipment Sales and Service"


On 10/10/19, 12:48 PM, "Ken Searles" <ksearles@internationalcontainerco.com> wrote:

Hi Senol, do you have any update on my Ermaksan press brake? My boss is very anxious right now.

Thank you,
Ken Searles
International Container Co., LLC
(413) 538-9200
www.internationalcontainerco.com

-----Original Message-----
From: "Ken Searles" <ksearles@internationalcontainerco.com>
Sent: Wednesday, October 9, 2019 1:22pm
To: s.rodoplu@ermakusa.com, service@ermaksan.com.tr
Cc: "mmenard@internationalcontainerco.com" <mmenard@internationalcontainerco.com>, "cwilson@internationalcontainerco.com" <cwilson@internationalcontainerco.com>, "Joseph Searles" <jsearles@internationalcontainerco.com>
Subject: FW: Ermaksan Press Brake

Exhibit
H

Hi Senol, here is the information you asked for.

The error code on the lazersafe module inside the cabinet  on ( channel 1 is 2209 ) & on ( channel 2 is A201 )

Machine Information.
Year: 2007
Model: CNCSAP 12 x 220
SER #: SN20071136
TON: 220

CONTROL
DELEM
TYPE: DA-66WE
SER #: 29374

Please let me know the quickest way to handle this. We've been inoperable for three weeks now and NEED to be back up running asap.
Thank you,
Ken Searles
International Container Co.
O:413-538-9200
C:413-478-5998

Sent from my iPhone

2

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| ERMAK USA, INC.,<br>an Illinois Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: |
| | ) | |
| NANTONG JUGAO MACHINERY CO., LTD<br>d/b/a ERMAK CNC MACHINE (NANTONG)<br>CO., LTD, a Chinese Corporation, | ) | **JURY TRIAL DEMAND** |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, ERMAK USA, INC. ("Ermak USA" or "Plaintiff"), by and through undersigned counsel, for its complaint against Defendant NANTONG JUGAO MACHINERY CO., LTD d/b/a ERMAK CNC MACHINE (NANTONG) CO., LTD ("Defendant"), and alleges the following:

## NATURE OF ACTION

1.     This is an action for trademark infringement and counterfeiting, false designation of origin, passing off, usage of counterfeit mark, and dilution under the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), 1125(c); deceptive trade practices under 815 ILCS § 510 of the Illinois Uniform Deceptive Trade Practices Act; trademark dilution under 765 ILCS § 1036/65 of the Illinois Trademark Registration and Protection Act; and trademark infringement and unfair competition under the common law of the State of Illinois, whereby Plaintiff is seeking an



Exhibit
I

injunction against the illegal infringement activities of Defendant, in addition to monetary damages and treble damages as allowed under the Lanham Act.

**PARTIES**

2.      Plaintiff is an Illinois corporation with a principal place of business at 2860 River Rd., Suite 145, Des Plaines, Illinois 60018.

3.      Defendant is a Chinese Corporation, with a principal place of business at No. 98, Renmin East Road, Xichang Town, Hai'an County, Nantong City, Jiangsu Province, China.

**JURISDICTION AND VENUE**

4.      As this action relates to trademark infringement, this Court has original subject matter jurisdiction over this action under 15 U.S.C. §1121(a) and under 28 U.S.C. §1338(a).

5.      As this case relates to unfair competition and deceptive trade practices that are joined with and substantially related to the trademark infringement action, this Court also has original jurisdiction over these claims under 28 U.S.C. §1338(b).

6.      This Court also has jurisdiction pursuant to 28 U.S.C. §1332(a) because Plaintiff is an Illinois corporation conducting business in Illinois while Defendant is a citizen of a foreign country, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

7.      This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. §1367(a).

8.      This Court has personal jurisdiction over Defendant, as it is a foreign corporation that transacts business in Illinois and around the United States. Defendant is reaching out to do business in Illinois by operating its website and third-party websites through which Illinois and United States residents can inquire and purchase products.

9.      Venue is proper in this District under 28 U.S.C. §§ 1391(c) in that Defendant is a
non-resident in the United States that may be sued in any judicial district.

## FACTUAL BACKGROUND

10.      Plaintiff currently owns and operates a corporation in Illinois where it imports,
sells and services Ermak / Ermaksan branded machines.

11.      Plaintiff is a foreign affiliate of ErmakSan Makina Sanayi Ve Ticaret
Anonimsirketi ("ErmakSan Turkey"), a Turkish corporation with a principal place of business at
Işıktepe, Lacivert Cd. No: 6, 16065 Işıktepe Organize Sanayi Bölgesi/Nilüfer/Bursa, Turkey.

12.      ErmakSan Turkey was formed in 1965 and has been using the Ermak and
Ermaksan trademarks worldwide since then.

13.      Prior to the formation of Ermak USA, ErmakSan Turkey made sales in the United
States from 2004 until Plaintiff was established in Illinois to oversee its operations and sales
throughout the United States.

14.      Plaintiff is the owner by assignment of the entire rights, title, and interest,
including the right to sue for infringement, of United States Trademark Registration No.
4,073,282 on the Principal Register for the *word mark* "ERMAK USA" for "metal working
machines." The priority date of this registration is February 28, 2011. A true and correct copy of
the registration is attached as Exhibit A.

15.      The "ERMAK USA" *word mark* has been in continuous use since Plaintiff's first
incorporation in September 22, 2010.

16.      The "ERMAK USA" *word mark* was registered on December 20, 2011 to the
Principal Register, and thus the registration is incontestable under the provisions of 15 U.S.C.

§1065 in that Section 8 and 15 Affidavits were timely filed with the United States Patent and Trademark Office ("USPTO").

17.     Plaintiff is the owner, pending registration of the trademark application Serial No. 90,497,147 by the USPTO, on the Principal Register for the *word mark* "ERMAK" for "metal working machines." The priority date of this registration is January 29, 2021. The ERMAK *word mark* has been in use since January 26, 2011, and in commercial use since January 26, 2011.

18.     Plaintiff is the owner, pending registration of the trademark application Serial No. 90,501,159 by the USPTO, of the Principal Register for the *design mark* consisting of a "narrow inverted triangle followed by the stylized word, 'ERMAK', with all letters capitalized", for use in accordance with "metal working machines." The priority date of this registration is February 1, 2021. The ERMAK *design mark* has been in use by ErmakSan Turkey since 2004 prior to the incorporation of Ermak USA in 2010.

19.     Images of the "ERMAK USA" *word mark* and the "ERMAK" *word mark* and *design mark* are detailed in the chart below (hereinafter collectively referred to as "Plaintiff's Marks").

| **Trademark No.** | **Trademark** |
|---|---|
| **Registered** Trademark No. 4,073,282 Word Mark | Ermak USA |

| Pending Trademark<br>Serial No. 90,497,147<br>Word Mark | Ermak |
|---|---|
| Pending Trademark<br>Serial No. 90,501,159<br>Design Mark | **VERMAK** |

20.     In addition to the above listed trademarks, Plaintiff is currently the owner of four other trademarks, which have been in commercial use since 2011 but are all pending with the USPTO.

21.     Plaintiff has expended significant sums of money to promote and advertise its business under its trademarks.

22.     More specifically, Plaintiff has advertised and used its trademarks in physical and online advertisements.

### Defendant's Infringing Conduct

23.     Defendant advertises, promotes, sells, and offers to sell metal working machinery by using Plaintiff's Marks.

24.     Upon information and belief, Defendant previously advertised its goods as Jugao Machinery and placed the Jugao Machinery name attached to its products.

25.     Soon after, upon information and belief, Defendant willfully, intentionally, and maliciously, and in conscious disregard of Plaintiff's rights, and in furtherance of Defendant's pecuniary interest, attached Plaintiff's Marks on its products and advertised it as such.

Dated May 4, 2021

Respectfully submitted,

/s/ Sam Osborne
Sam Osborne
State Bar No. 6324443
Atom Law Group, L.L.C.
770 N. LaSalle Dr., Suite 700
Chicago, Illinois
(312) 943 8000 Phone
(312) 943 4984 Facsimile
ATTORNEY FOR PLAINTIFF

Case 3:23-cv-30016-MGM   Document 47-1   Filed 10/09/23   Page 53 of 60

ERMAKSAN MAK. SAN.TIC. AS v. PPA MEDIA..., 2013 WL 3788469...

2013 WL 3788469 (UDRP-ARB Dec.)

ERMAKSAN MAK. SAN.TIC. AŞ v. PPA MEDIA SERVICES, RYAN G FOO

WIPO Arbitration and Mediation Center

ADMINISTRATIVE PANEL DECISION

ERMAKSAN MAK. SAN.TIC. AŞ v. PPA MEDIA SERVICES, RYAN G FOO

Case No. D2013-0801
**\*1** Doman Name: ermaksan.com

**Case Type: Domain Name**
**Award Amount: Equitable**
 **\*5  Award Date: July 10, 2013**
**Arbitrator:** Warwick A. Rothnie

### 1. The Parties

The Complainant is Ermaksan Mak. San.Tic. AŞ of Bursa, Turkey, internally represented.

The Respondent is PPA Media Services, Ryan G Foo of Santiago, Chile.

### 2. The Domain Name and Registrar

The disputed domain name ‹ermaksan.com› is registered with Internet.bs Corp. (the 'Registrar').

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the 'Center') on May 6, 2013. On May 6, 2013, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain name. On May 10, 2013, the Registrar transmitted by email to the Center its verification response:

(a)confirming it is the Registrar for the disputed domain name;

(b) disclosing registrant and contact information for the disputed domain name which differed from the named Respondent and contact information in the Complaint;

(c) indicating the disputed domain name was first registered on October 15, 2005;

(d) confirming the language of the registration agreement is English; and

(e) confirming the disputed domain name was registered subject to the Uniform Domain Name Dispute Resolution Policy (the 'Policy' or 'UDRP'), and the UDRP applies to the disputed domain name.

The Center sent an email communication to the Complainant on May 24, 2013, providing the registrant and contact information disclosed by the Registrar, and inviting the Complainant to submit an amendment to the Complaint. In the same email communication, the Center also requested the Complainant to amend the Complaint, namely paragraphs relating to the



Exhibit
J

Case 3:23-cv-30016-MGM   Document 47-1   Filed 10/09/23   Page 54 of 60

ERMAKSAN MAK. SAN.TIC. AS v. PPA MEDIA..., 2013 WL 3788469...

identification of the correct Registrar, and describe the grounds on which it is made, as required by Policy, paragraph 4 and Rules, paragraph 3. The Complainant filed an amended Complaint on May 27 and a second amended Complaint on May 28, 2013.

The Center verified that the Complaint together with the amended Complaints satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the 'Policy' or 'UDRP'), the Rules for Uniform Domain Name Dispute Resolution Policy (the 'Rules'), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the 'Supplemental Rules').

In accordance with the Rules, paragraphs 2(a) and 4(a), the Center formally notified the Respondent of the Complaint, and the proceedings commenced on May 29, 2013. In accordance with the Rules, paragraph 5(a), the due date for Response was June 18, 2013. The Respondent did not submit any response. Accordingly, the Center notified the Respondent's default on June 19, 2013.

*2  The Center appointed Warwick A. Rothnie as the sole panelist in this matter on June 26, 2013. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

**4. Factual Background**

The Complainant is a manufacturer of sheet metal fabricating equipment such as laser tools and systems, rod cropping, electrodes for plasma cutting, press brakes, punch presses, iron workers and engraving systems.

It started business in Turkey in 1965 producing textile and leather fabricating machines, generators and electric motors. Its business developed and expanded into sheet metal fabricating machines in 1980. It now exports its products to over 70 countries around the world including countries in the Americas including, through an agency, Chile.

The Complainant's business operates under the brand name ERMAKSAN. It has registered trademarks for ERMAKSAN including United States trademark No. 3,291,159 registered on September 11, 2007 and International trademark No. 888322 registered on March 16, 2006, both for a range of goods in International Class 7.

According to the Complaint, 'ermaksan' is an invented word, being a combination of syllables for the Turkish words for 'name', 'machine' and 'industry'.

The disputed domain name resolves to a website which consists of a number of links to suppliers of equipment or services in the sheet metal fabrication field such as 'CNC Cutting Machine', 'Laser Marking Machines', 'Cutting Equipment', 'Hydraulic Press Machine' and 'Sheet Metal Machinery'. There are also a number of links to specific brands or manufacturers. None of these appear to be ERMAKSAN brand machinery or services.

**5. Discussion and Findings**

Paragraph 4(a) of the Policy provides that in order to divest the Respondent of the disputed domain name, the Complainant must demonstrate each of the following:

(i) the disputed domain name is identical or confusingly similar to a trademark or service mark in which the Complainant has rights; and

(ii) the Respondent has no rights or legitimate interests in respect of the disputed domain name; and

(iii) the disputed domain name has been registered and is being used in bad faith.

Case 3:23-cv-30016-MGM   Document 47-1   Filed 10/09/23   Page 55 of 60

ERMAKSAN MAK. SAN.TIC. AS v. PPA MEDIA...; 2013 WL 3788469...

No response has been filed. The Complaint (in its second amended form) has been served, however, on the physical and electronic coordinates confirmed as correct by the Registrar. Accordingly, the Panel finds that the Complaint has been properly served on the Respondent.

When a respondent has defaulted, paragraph 14(a) of the Rules requires the Panel to decide on the Complaint in the absence of exceptional circumstances. Accordingly, paragraph 15(a) of the Rules requires the Panel to decide the dispute on the basis of the statements and documents that have been submitted and in accordance with the Policy, Rules and any rules and principles of law deemed applicable.

**\*3  A. Identical or Confusingly Similar**

The first element that the Complainant must establish is that the disputed domain name is identical with, or confusingly similar to, the Complainant's trademark rights.

There are two parts to this inquiry: the Complainant must demonstrate that it has rights in a trademark and, if so, the disputed domain name must be shown to be identical or confusingly similar to the trademark.

The Complainant has proven ownership of the registered trademarks referred to in section 4 above.

On the question of identity or confusing similarity, what is required is simply a comparison and assessment of the disputed domain name itself to the Complainant's proved trademarks: see for example, *Disney Enterprises, Inc. v. John Zuccarini, Cupcake City and Cupcake Patrol*, WIPO Case No. D2001-0489; *IKB Deutsche Industriebank AG v. Bob Larkin*, WIPO Case No. D2002-0420. This is different to the question under trademark law which can require an assessment of the nature of the goods or services protected and those for which any impugned use is involved, geographical location or timing. Such matters, if relevant, may fall for consideration under the other elements of the Policy.

In the present circumstances it is permissible to disregard the '.com' component of the disputed domain name as a functional aspect of the domain name system: *Telstra Corporation Limited v. Ozurls*, WIPO Case No. D2001-0046, *Ticketmaster Corporation v. DiscoverNet Inc.*, WIPO Case No. D2001-0252.

Accordingly, the Panel finds that the Complainant has established that the disputed domain name is identical to the Complainant's trademarks and the requirement under the first limb of the Policy is satisfied.

**B. Rights or Legitimate Interests**

The second requirement the Complainant must prove is that the Respondent has no rights or legitimate interests in the disputed domain name.

Paragraph 4(c) of the Policy provides that the following circumstances may be situations in which a respondent has rights or legitimate interests in a domain name:

(i) before any notice to you of the dispute, your use of, or demonstrable preparations to use, the domain name or a name corresponding to the domain name in connection with a *bona fide* offering of goods or services; or

(ii) you (as an individual, business, or other organization) have been commonly known by the domain name, even if you have acquired no trademark or service mark rights; or

(iii) you are making a legitimate noncommercial or fair use of the domain name, without intent for commercial gain to misleadingly divert consumers or to tarnish the trademark or service mark at issue.

Case 3:23-cv-30016-MGM   Document 47-1   Filed 10/09/23   Page 56 of 60

ERMAKSAN MAK. SAN.TIC. AS v. PPA MEDIA..., 2013 WL 3788469...

As is well established now, these are illustrative only and are not an exhaustive listing of the situations in which a respondent can show rights or legitimate interests in a domain name.

Further, the onus of proving this requirement, like each element, falls on the Complainant. Panels have recognized the difficulties inherent in disproving a negative, however, especially in circumstances where much of the relevant information is in, or likely to be in, the possession of the respondent. Accordingly, it is usually sufficient for a complainant to raise a *prima facie* case against the respondent under this head and an evidential burden will shift to the respondent to rebut that *prima facie* case. See, *e.g.*, WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Second Edition ('WIPO Overview 2.0'), paragraph 2.1.

**\*4** The Complainant states that it has not authorized the Respondent to use the trademark, ERMAKSAN. Nor is it in any other way associated with the Respondent. Further, the disputed domain name is plainly not derived from the Respondent's name or that of the individual apparently associated with the Respondent. In addition, it appears that the disputed domain name is being used to generate pay-per-click revenue through advertisements for brands that compete with the Complainant's business.

These factors raise a clear *prima facie* case that the Respondent does not have rights or legitimate interests in the disputed domain name. The Respondent has not sought to rebut that *prima facie* case.

The Respondent appears to have an address in Chile. The Complaint does not include evidence that the Complainant has a registered trademark for ERMAKSAN in Chile. That is not necessarily fatal to the Complaint in this case. First, the Respondent has not sought to assert some right or justification to ERMAKSAN under Chilean law. Secondly, the website to which the disputed domain name resolves at the time of preparing this Decision is not restricted just to business in Chile. For example, the page generated at the time this Decision was being prepared is entirely in English. The links on the page advertise businesses operating in various countries such as Australia and the United States of America and seek to generate custom from those countries as well as, in some cases, Latin America. Moreover, the distinctive component of the disputed domain name consists of (what so far as the Panel can ascertain) an invented or coined term which has significance only by reason of its association with the Complainant's business. UDRP panels have repeatedly held that the adoption of such a name to generate revenue from click-through advertisements for businesses that are not associated with the Complainant's trademark does not constitute a *bona fide* offering of goods or services for the purposes of the Policy.

The registered trademarks proved by the Complainant date from March 16, 2006, which is after the date the disputed domain name was first registered. The Registrar has not confirmed whether the disputed domain name was first registered to the Respondent or the Respondent acquired the registration at some later date. However, the Complainant has demonstrated that it was using ERMAKSAN long before the date it registered its trademarks and, further, before the disputed domain name was first registered. As it appears that 'ermaksan' is apparently an invented or coined term, having significance only as a source identifier for the Complainant's goods, it appears that the Respondent adopted the disputed domain name with full knowledge of the Complainant and its business.

Accordingly, the Panel finds that the Complainant has established that the Respondent does not have rights or legitimate interests in the disputed domain name under the Policy.

## C. Registered and Used in Bad Faith

Under the third requirement of the Policy, the Complainant must establish that the disputed domain name has been both registered and is being used in bad faith by the Respondent.

For the reasons discussed in sub-section 5B above, it appears likely that the Respondent registered the disputed domain name with knowledge of the Complainant and its business and has sought to generate revenues from the disputed domain name

because of its significance as an identifier of the Complainant's products. These activities fall clearly within paragraph 4(b)(iv) of the Policy:

(iv) by using the domain name, you have intentionally attempted to attract, for commercial gain, Internet users to your web site or other on-line location, by creating a likelihood of confusion with the complainant's mark as to the source, sponsorship, affiliation, or endorsement of your web site or location or of a product or service on your web site or location.

Accordingly, the Panel finds that the Respondent has both registered and is using the disputed domain name in bad faith.

## 6. Decision

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain name ‹ ermaksan.com› be transferred to the Complainant.

Date: July 10, 2013

Arbitrator: Warwick A. Rothnie
Sole Panelist

Copyright © 2001 World Intellectual Property Organization (WIPO)

Copyright (c) 2011 West Group
2013 WL 3788469 (UDRP-ARB Dec.)

---

**End of Document**                                        © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Innovative Technologies. | **www.ermaksan.com.tr** | Press Brake Series.



# POWER-BEND PRO
3 Axes (R Manual) CNC Press Brake.



Exhibit K

# ERMAKSAN
METAL FABRICATING MACHINERY

*innovative technologies.*

www.ermaksan.com.tr

## After half a century, Ermaksan is moving confidently into the future

With 48 years of technological investment and innovative R&D department, Ermaksan has become one of the of the world's leading companies in the sheetmetal fabricating machinery industry.

Ermaksan is a pioneer in the industry with strong R&D department, 880,000 sq.ft. modern production facility, highly qualified team of 700 staff dedicated to high quality manufacturing of our machine tools.

Our factory is equipped with the latest industry leading precision CNC machines. Under the supervision of expert engineers, the factory manufactures 3,000+ machines annually. Ermaksan is one of the world's leading companies in the industry represented by exclusive dealers around the world with strong technical support in 70 countries.

Ermaksan designs and manufactures durable, productive, and value based machinery. We do this by continuously meeting customer demands and exceeding industry standards towards sustainable growth.



High-Tech
CNC Machines
manufactured by
Ermaksan;

- New Generation Fiber Lasers
- CO₂ Lasers
- Press Brakes
- Servo Motorized Hybrid Press Brakes
- Plasma Cutting Machines
- Punch Presses
- Shear Cutters
- Iron Workers



# ERMAK USA
METAL FABRICATING MACHINERY

## ERMAKSAN's first subdivision and showroom in North America, ERMAK USA.

Ermaksan USA opened its doors to its customers and business partners in the Chicago land area in 2010 with a 11,000 square foot facility, where you can see state of art Ermaksan products under power.

In order to show Ermaksan customers our endless commitment to their success we have placed over $2,000,000 dollars in spare parts in inventory at our Chicago Facility.

We invite everyone to visit our facility to see a demonstration of our machines at their convenience.

www.ermakusa.com

*Publication Date: January 11, 2022*

DAMAGES – LOSS OF CONSORTIUM

## Loss of Consortium – Spouse

In addition to PLF's claim, PLF's spouse, SPSE, also seeks damages for loss of his/her right to enjoy PLF's company, companionship and affection as a part of the marriage relationship. We call this a claim for loss of consortium.[1]

SPSE can recover for loss of consortium only if you find that DFT's negligence caused injury to PLF. In addition, SPSE must prove that PLF's injury caused harm to the marital relationship.

[<*If The Fact Of Loss Of Consortium Is Contested*> To prove harm to the marriage relationship, PLF must prove that DFT's negligence caused some loss of the full enjoyment of the marriage. That may include any loss of right to enjoy the company, companionship and affection [including sexual relations] between the spouses, any loss of comfort or moral support any restrictions on the couple's social or recreational life, any loss of services that SPSE would have provided or any other harm to full enjoyment of the marriage. If you find that as a result of DFT's negligence, SPSE suffered a loss of consortium, you should answer "yes" to question __. If not, then answer "no."]

<*In all cases*.> Question __ asks: "What total amount of money will fully and fairly compensate SPSE for loss of consortium?" To answer this question, you should determine how the marriage relationship changed because of PLF's injury. In awarding damages for loss of consortium, you may consider what amount of money will fairly and reasonably compensate SPSE for:

- o loss of company and companionship;
- o loss of comfort, and moral support;

---

[1]   See *Feltch* v. *General Rental Co.*, 383 Mass. 603, 607-609 (1981); *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 160 (1973); *Mouradian* v. *General Elec. Co.*, 23 Mass. App. Ct. 538, 544 (1987).

Exhibit L