UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
IVAN LAGUNA, and                                    )
MARGARITA LOPEZ                                     )
    Plaintiffs                                          )
                                                    )
v.                                                  )         C.A. No. 3:23-CV-30016
                                                    )
LAZER SAFE, PTY, LTD,                               )
FIESSLER ELECTRONIK GmbH & CO., KG.,                )
ERMAK USA, INC.,                                    )
ERMAKSAN TURKEY, aka                                )
ERMAKSAN  MAKINA SANAYI VE TICARET A.S., and)
JOHN DOE DISTRIBUTOR                                )
    Defendants                                          )
_____             )


**PLAINTIFF'S OPPOSITION TO DEFENDANT,
LAZER SAFE, PTY, LTD'S MOTION TO DISMISS
AND REQUEST FOR LIMITED DISCOVERY AS TO PERSONAL JURISDICTION**

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Now come the Plaintiffs, Ivan Laguna and Margarita Lopez ("the Plaintiffs"), and hereby

oppose the Motion to Dismiss filed by the defendant, Lazer Safe, Pty, Ltd., ("LAZER"). The

plaintiff asks the Court to deny LAZER'S motion, or in the alternative to stay its ruling and

allow time for discovery on the issue of the Court's personal jurisdiction over LAZER.

In support of this Opposition, the Plaintiffs state that they expect that limited

jurisdictional discovery will show that there are sufficient facts to establish personal jurisdiction

over LAZER  under M.G.L. c. 233A, §3 and the Due Process Clause of the Fourteenth

Amendment to the United States Constitution.

LAZER's affidavit in its motion from CEO Ian Costly fails to mention that LAZER has a

U.S. presence at several levels of its business.  LAZER actively works inside the United States

on the ANSI sub-committed to develop safety standards;

*"Since 2001 we have been committed to the development and understanding of European and international safety standards. We have representation on several international standards committees including the European CEN/TC committee that is responsible for the EN12622 press brake standard, <u>in the United States on the ANSI B11.3 sub-committee, the ISO Standards Committee and also involved in a consultative capacity for other international standards committees.</u>(emphasis supplied)( (Exhibit Brochure).*

LAZER's marketing brochure proudly states:

*"International markets.  We partner with press brake manufacturers and export our systems to key markets around the world. Our primary markets are Europe, Japan, <u>North America</u> and China with secondary markets in South America, Turkey, Southeast Asia, Middle East, India and Australasia"* (emphasis supplied)(Exhibit 11).

The brochure continues to proclaim:

*"Unmatched customer service.   Our OEM customers benefit from the highest level of support that only Lazer Safe can provide. Machine manufacturers have direct contact with the engineering team that designs and develops the products so hardware and software solutions are tailored to suit the manufacturer's exact requirements. This also ensures the manufacturer receives the very best technical support with prompt and correct answers the first time. <u>For the manufacturer this model is more efficient than dealing through an agent or reseller.</u> Our engineering team travels the world to support our OEM customers with supplementary support provided through our international network of specialised technical centres.*(Id.).  (emphasis supplied).

The brochure continues to identify the location of its specialized technical center inside the United States to be in Lancaster, Texas. (Exhibit 11,p. 3).

LAZER's website links to its United States representative/agent/affiliate, THCO LLC, in Lancaster, Texas, which the Plaintiff maintains constitutes LAZER's ongoing presence in the United States, and in October 2019, within Massachusetts.  LAZER refers to THCO LLC as its "Master Distributor" and spare parts dealer for LAZER.  (Exhibit 10, p.3, Exhibit 12).  Through THCO LLC, LAZER provides:

- *Systems and spare parts <u>stocked locally with overnight shipping to most locations</u>.*
- *<u>Quality installation services</u> with most retrofits completed in one day so your machines are back in production with minimal downtime.*

- ***Expert training services*** to help your operators achieve maximum performance and productivity benefits.
- *Competitive all inclusive package pricing with no hidden extras.*
- ***Dedicated telephone technical support***.
- ***Experienced and knowledgeable field engineers***. (Exhibit 10, p.3 )(emphasis supplied).

Further, LAZER considers its technical support to part of LAZER so its service is more efficient than dealing through an agent or reseller. (Exhibit 11, p. 3).

The Plaintiff's maintain that THCO LCC is a representative/agent/affiliate of LAZER for the purposes of personal jurisdiction in this matter; and discovery should be permitted to determine their role in the October 2019 LAZER light curtain repair discussed infra.

The limited evidence the Plaintiffs have been able to develop to date shows that the Plaintiff's employer, International Container Company, ("ICC"), located in Holyoke, Massachusetts, obtained assistance, hardware and computer programs from LAZER in October 2019, when the LAZER light curtain began malfunctioning on the subject press brake machine in July of 2019. (Exhibits 1-5).

There are threads of evidence, provided by the Plaintiff's Massachusetts employer and owner of the subject press brake machine, International Container Company, ("ICC") in the form of emails and photos, which establish that in October 2019 (less than one year before the Plaintiff's accident and injury), there was a malfunction issue with the components and/or software manufactured by LAZER. (Exhibits 1,2,3).   The emails document that ICC worked with Defendant Ermak U.S.A., Inc. to obtain from LAZER, a light guard compatible with the subject press brake machine, and with programs loaded into it by LAZER designed to install the light guard into the subject press brake machine.  (Id.)  Further, the email communication discusses the sale price of $8,750 for the LAZER part and $800 for LAZER's programming, for

at total cost of $9,550 plus shipping. (Exhibit 3).   These threads of evidence can be further developed through jurisdictional discovery.

The Plaintiffs should be permitted to conduct jurisdictional discovery from ICC, Ermak U.S.A., Inc., and LAZER/THCO LLC, to establish the nature and extent of communications and commerce between ICC and LAZER/THCO LLC.  The photograph of the subject press brake machine in October 2022 shows that LAZER's light guard had been delivered and installed onto the subject machine. (Exhibits 4, 5).  Further discovery at this point in the case is expected to prove that the Plaintiff's accident and injury would have been prevented if LAZER's light curtain had properly operated to stop the subject press brake machine.

In determining personal jurisdiction in Massachusetts, the Court should consider the role of LAZER'S interactive website, and internet presence, in establishing personal jurisdiction in Massachusetts.  Through its website, LAZER conducts worldwide business, sale and distribution of products, product support, retrofit library, services, maintenance, training, including into Massachusetts.  (Exhibit 10).   LAZER's website utilizes "cookies" to track the particular users who interact with its website; and is expected to have meta data showing the number and nature of contacts between Massachusetts residents and businesses and LAZER.  The Plaintiffs should be permitted to conduct jurisdictional discovery to obtain and review the data as to active use by Massachusetts businesses and residents of LAZER'S website and services.

LAZER's affidavit offered in support of its motion was silent on the October 2019 contacts between LAZER and ICC.  LAZER's affidavit was silent on the nature and extent of LAZER's presence in the United States.  LAZER's affidavit is also silent on the interactive role of  LAZER'S website, and data available to examine the numbers and frequency of

Massachusetts businesses and residents activity accessing the various interactive aspects of LAZER'S website.

When the LAZER light guard components malfunctioned in the subject press brake machine in Massachusetts, through improper design, installation, manufacture, repair or maintenance, they caused the press brake machine injury to the Plaintiff within Massachusetts. Therefore, aforementioned activities of LAZER, taken in total, establish sufficient minimum contacts for the Massachusetts courts to maintain personal jurisdiction over LAZER in this case.

## II.   <u>FACTS</u>

1. On or about September 29, 2020, the Plaintiff, while working in the course of business for his employer International Container Company, LLC, ("ICC") in Holyoke, Massachusetts, operated the subject press brake machine, its components, and its controls, with due care when LAZER's light guard failed to prevent the subject press brake machine from crushing and amputating fingers in both of the plaintiff's hands, causing Ivan Laguna and his wife, Margarita Lopez injury. (Second Amended Complaint).

2. LAZER designed, advertised, manufactured, installed, sold, distributed, the subject safety light guard, and its software to ICC in October 2019.  (Exhibits 1 - 5).

3. LAZER advertises in trade publications which are distributed in the United States, and Massachusetts; <u>The Fabricator</u> (Exhibit 6);

4. LAZER operates a <u>Youtube</u> channel containing 23 videos advertising and training for use of its products.  This <u>Youtube</u> channel streams into the United States and Massachusetts. (Exhibit 7).

5.  LAZER has a marketing, delivery, training, service, and advertising interactive presence on the internet, through <u>Youtube</u> (Exhibit 7), <u>Twitter</u> (Exhibit 8), <u>Linked In</u> (Exhibit 9), and other apps wherein it presents, markets, advertises, sells, its products, training and services worldwide, including into Massachusetts.

6.  It is believed that LAZER collects data in form of "Cookies" from Massachusetts businesses and residents who access or use its website; and obtains revenue from selling that information.

7.  LAZER invites Massachusetts businesses and residents to the webpage to interact with LAZER experts, to train, repair, install, and maintain LAZER products remotely, and attend demonstrations and product conventions.  (Exhibit 10).

8.  LAZER participates in developing industry safety standards within the United States and Massachusetts, and has presence on the United States committee for ANSI standards. (Exhibit 11, p. 3)

9.  LAZER maintains technical centers within the United States staffed with engineering teams who design and develop the products so hardware and software solutions are tailored to suit the manufacturer's exact requirements; and the engineering teams travel within the United States to support LAZER light guards within press brake machines. (Exhibit 11, p.4)

10. THCO LLC, is LAZER's "Master Distributor and Authorized Spare Parts Center for Lazer Safe retrofit press brake guarding systems." (Exhibit 12).  TCHO LLC's website describes how their "..dedicated and experienced technicians travel the country outfitted with all the tools and equipment required for any press brake application.  Upon arrival, our installers unload mobile work carts and set-up next to the machine.  Most of the

installation and system components are prepared and preassembled off-site, significantly

reducing installation time.  Most systems are installed and commissioned in a day or less

allowing for maximum machine uptime.  This allows our expert staff more time for

operator training and streamlining set-up to suit your bending applications.  Once our

retrofit process is completed our installers clean up the work site, hand over completed

and signed off training forms and provide your site manager system manuals, guides and

alignment tools. (Exhibit 12, p.1, paragraph 3).

**ARGUMENT**

The Plaintiffs bear the burden of establishing that the court may properly exercise

personal jurisdiction over defendants. *Nandjou v. Marriott Int'l, Inc.*, 985 F.3d 135, 148 (1st Cir.

2021).   On a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2),

the court may choose from several methods of determining whether Plaintiffs have satisfied their

burden. *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 145,146 (1st Cir. 1995)

*discussing Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671 (1st Cir. 1992)).

This court must determine whether its exercise of personal jurisdiction over defendants

comports with the forum state's long-arm statute and with the Fourteenth Amendment's Due

Process Clause. *Nandjou*, 985 F.3d at 148.

**A.  PERSONAL JURISDICTION OVER LAZER IS SUPPORTED BY THE
MASSACHUSETTS LONG ARM STATUTE**.

Mass. Gen. Laws. ch. 223A, § 3(a), provides that the court "may exercise personal

jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or

equity arising from the person's...transacting any business in this commonwealth...."[8] Section

3(a) is construed "broadly" in favor of personal jurisdiction. *Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767, 625 N.E.2d 549 (1994).

The Massachusetts Long Arm Statute dictates that personal jurisdiction exists if any one of the following conditions is satisfied: "(a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; [or] (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth." M.G.L. c. 233A, §3. The statute has been interpreted as extending the reach of personal jurisdiction as far as the limits of the US Constitution, so long as some basis for jurisdiction under the statute has been established. *Heins v. Wilhelm Loh Wetzlar Optical Machinery GmbH & Co. KG*, 26 Mass.App.Ct. 14, 16 (1988), quoting *Good Hope Indus., Inc. v. Ryder Scott Co.*, 378 Mass. 1, 6 (1979).

The statute intends for principals to be subject to jurisdiction in the Commonwealth for the acts of their agents. *Carreras v. PMG Collins, LLC*, 660 F.3d 549, 556 (1st Circ. 2011).

## B. PERSONAL JURISDICTION OVER LAZER IS SUPPORTED BY THE FOURTEENTH AMENDMENT

The Fourteenth Amendment requires that defendants have "such 'contacts' with the forum state that 'the maintenance of the suit' is 'reasonable, in the context of our federal system of government,' and 'does not offend traditional notions of fair play and substantial justice.' " *Ford Motor Co. v. Montana Eighth Judicial District Court*, ─── U.S. ───, 141 S.Ct. 1017, 1024, 209 L.Ed.2d 225 (2021) (*quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-317, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The constitutional analysis turns on the nature and extent of the relationship between defendants and the forum state. *Id.* Depending on the nature and extent of that

relationship, the court may exercise either general or specific jurisdiction. *Id.*

### C. LAZER IS SUBJECT TO PERSONAL JURISDICTION IN MASSACHUSETTS BECAUSE THE PLAINTIFFS HAVE ALLEGED THAT LAZER CAUSED THEM TORTIOUS INJURY IN THE COMMONWEALTH.

The facts alleged in the Second Amended Complaint involve the Plaintiff's operation of the subject press brake machine; and the safety light grid, which contained the subject light guard components designed, manufactured, assembled, packaged, distributed and shipped by LAZER, malfunctioned and failed to stop the press brake machine from crushing and shearing off the Plaintiff Ivan Laguna's fingers in both his hands, while he worked at  International Container Company, LLC, in Holyoke, Massachusetts. (Second Amended Complaint).

### D. SPECIFIC JURISDICTION EXISTS IN MASSACHUSETTS OVER LAZER BECAUSE IT UTILIZED ITS WEBSITE TO DERIVE SUBSTANTIAL REVENUES FROM MASSACHUSETTS BUSINESSES AND RESIDENTS.

Specific jurisdiction allows the court to exercise personal jurisdiction over defendants who are not intimately tied to the forum state. *Ford*, 141 S.Ct. at 1024. In *Ford*, the Supreme Court recently explained that the contacts needed for specific jurisdiction often go by the name purposeful availment. The defendant must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State. The contacts must be the defendant's own choice and not random, isolated, or fortuitous. They must show that the defendant deliberately reached out beyond its home, for example, by exploiting a market in the forum State or entering a contractual relationship centered there. There must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.   The Plaintiffs maintain that LAZER conducted, at a minimum, the design, manufacture, sale and installation of LAZER's light guard into the subject press brake machine in October 2019, less than one year before the Plaintiff's accident and

injuries while operating the subject press brake machine. (Exhibit 1, Exhibit 2, Exhibit 3, Exhibit 4).

The Plaintiffs also maintain that LAZER's internet presence and activity inside Massachusetts, through its sophisticated, interactive website, provides the specific jurisdiction.  LAZER's sophisticated, interactive website is believed to have conducted several different types of business activity within Massachusetts, including advertising, sales, installation of LAZER's products in Massachusetts.  The Plaintiffs believes that limited discovery on jurisdiction will prove that LAZER derives substantial revenues from goods used and/or services rendered to the worldwide web users in Massachusetts through the operation of LAZER's comprehensive interactive website. The Plaintiffs have only been able to conduct a limited level of investigation of LAZER's website at this stage in the case, however, the early examination of LAZER's website establishes that it is much more than simple advertising on the web; it is a sophisticated interactive tool for LAZER to conduct installation and repair business, maintenance review, and assessment, sell software programs to operate LAZER's light guards..  This level of interactivity forms the basis for personal jurisdiction according to _Zippo Mfg. Co. v. Zippo Dot Com_, 952 F.Supp. 1119 (W.D. Pa. 1997). In the _Zippo_ case, the plaintiff sued defendant in Pennsylvania for trademark dilution and violations of the Federal Trademark Act because defendant owned a website that provided information about Zippo lighters, plaintiff's products, advertisements, and subscriptions to a news service about the plaintiff 's products. Defendant moved to dismiss for lack of personal jurisdiction.

In deciding whether the exercise of personal jurisdiction over a non-resident defendant is appropriate, the court, in _Zippo_, applied a three-prong test: (1) the defendant must have minimum contacts with the forum state; (2) the claim asserted must arise out of those contacts; and (3) the

exercise of jurisdiction must be reasonable. In order to establish that the defendant has minimum contacts with the forum state, the inquiry is whether the defendant purposefully availed himself to the state; a key aspect of this examination is whether the defendant's contact with the state is such that it is foreseeable that he may be brought to court there.  In the case at bar, it is fair to conclude that the emails are evidence of contact between ICC and LAZER to design, manufacture, sell and install the light guard and its operational software for the subject press brake machine owned by ICC in Massachusetts.

### E.  LAZER  PURPOSEFULLY AVAILED ITSELF OF THE PRIVILEGE OF CONDUCTING ACTIVITY WITHIN MASSACHUSETTS THROUGH LAZER'S WEBSITE

The Supreme Court has not yet provided clear guidance on defendants' "virtual" contacts with a forum state. *See Ford,* 141 S.Ct. at 1028 n. 4 ("we do not here consider internet transactions, which may raise doctrinal questions of their own") (*citing Walden v. Fiore*, 571 U.S. 277, 290 n. 9, 134 S.Ct. 1115, 188 L.Ed.2d 12 (2014) ("this case does not present the very different questions whether and how a defendant's virtual 'presence' and conduct translate into 'contacts' with a particular State")).

However, and significantly, in a recent First Circuit decision, the court held that jurisdiction existed where a German company's interactive website was in English, offered a 14-day free trial to users, including two customers in the forum state, and touts its services as "Trusted by over 5000 projects and companies around the world." *Plixer International, Inc. v. Scrutinzer GmbH*, 905 F.3d 1.  The purposeful availment requirement ensures that the exercise of jurisdiction is essentially voluntary and foreseeable, not premised on a defendant's "random, fortuitous, or attenuated contacts." *Plixer*, at 7, quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)).

In the case of _Edvisors Network, Inc. v. Educational Advisors, Inc._, 755 F.Supp. 2d 272, 282, the court held that purposeful availment was met where the defendant's website solicited clients and encouraged potential customers to contact defendant through the site even though it did not specifically target Massachusetts, and defendant had never had Massachusetts clients, nor derived revenue from Massachusetts. Id.

The First Circuit has repeatedly held that a defendant who uses its website to engage in commerce with the forum's customers "should not be surprised" at litigation within that forum. _Plixer,_ at 8.

LAZER invites customers from all over the world, including Massachusetts, to interact with it directly through the website. No part of the website prohibits or discourages the participation of Massachusetts users. _See Hasbro, Inc. v. Clue Computing, Inc._, 994 F.Supp. 34, 44-5 (D.Mass. 1997) (holding purposeful availment satisfied where defendant's website "purposefully directed its advertising at all the states," "did nothing to avoid Massachusetts," and "encourag[ed] and enabl[ed] anyone who wishes, including Massachusetts residents, to send email to the company").Id.   Similarly, LAZER, through its sophisticated interactive website has been availing itself of the benefit of conducting business and activity in Massachusetts.

Furthermore, the notion of LAZER being hauled into a Massachusetts courtroom does not offend fundamental notions of justice and fair play.  Courts have held that revenues as low as $5,000 satisfy the "substantial revenue" element of this statute. See Mark v. Obear & Sons, Inc., 313 F. Supp. 373 (D. Mass. 1970) (holding that "substantial revenue" element of  element of §3(d) is satisfied where gross revenue from Massachusetts is $5,000 notwithstanding the fact that the gross revenue accounted for only 0.5% of company's total sales). See also Keds Corp. v. Renee Int'l Trading Corp., 888 F.2d 215, 219 (1ˢᵗ Circ. 1989) ("sale of 6,000 pairs of shoes for

12

$15,000 easily meets [§3(d) substantial revenue] requirement").   The Plaintiffs require discovery

to determine the revenues LAZER has gleaned through its website from Massachusetts

businesses and residents.  In the case at bar, we know that LAZER sold the subject LAZER light

guard and installation software to ICC for $9,550.00 plus shipping. (Exhibit 1, Exhibit 2, Exhibit

3).

A corporate defendant, such as LAZER, can derive substantial revenues from sales in

Massachusetts from advertising in the state and otherwise targeting the state for marketing

activities. *Bartow v. Extec Screens and Crushers, Ltd.*, 53 F.Supp.2d 518, 522 (D.Mass. 1999).

The plaintiff believes discovery as to LAZER's website revenue will provide this information.

Further, discovery from Press Brake Safety, LAZER's exclusive North American agent, is

expected to provide additional evidence of LAZER's contacts and revenue from Massachusetts.

(Exhibit I).

### F. THE PLAINTIFFS SHOULD BE PERMITTED TO CONDUCT DISCOVERY ON THE ISSUE OF JURISDICTION BEFORE THE COURT HEARS ARGUMENT OF THE DEFENDANT'S MOTION TO DISMISS BASED UPON PERSONAL JURISDICTION.

The Plaintiffs believe that allowing discovery prior to hearing the motion to dismiss will

lead to evidence of advertising, marketing, interaction with businesses and residents, as well as

other high-cost sales of its products by LAZER in Massachusetts.  The sale of the subject

LAZER light guard and installation/operation software to ICC in October 2019 is likely not to be

the only such transaction.

The Plaintiffs believe that, if discovery is allowed to continue against LAZER, even more

facts will emerge to support personal jurisdiction over LAZER.

The burden is on the plaintiff to make a prima facie showing of personal jurisdiction

based on evidence of specific facts set forth in the record. Boit v. Gar-Tec Products, Inc., 967

F.2d 671, 675 (1st Circ. 1992). This standard clearly contemplates that there will, in fact, be a "record" from which the plaintiff can draw such facts, especially when there are no affiants available to the plaintiff to swear affidavits making specific allegations of fact against a defendant. See: Boit, 967 F.2d 671 (Plaintiffs relied on deposition of witness to oppose motion to dismiss for lack of personal jurisdiction); Nicastro v. J. McIntyre, Ltd., 201 N.J. 48 (2010) (Court remanded case for further discovery on the issue of personal jurisdiction); Bartow, 53 F.Supp. 518 (Court ordered limited discovery on issue of personal jurisdiction over defendant); Heins, 26 Mass.App.Ct. 14 (Parties relied on affidavits, interrogatory answers, and deposition testimony in arguing the motion to dismiss for lack of personal jurisdiction); Carreras, 660 F.3d 549 (Court remanded for findings on issue of potential agency relationship between defendant and woman who acted in forum).

The Plaintiffs should be afforded an opportunity to gather the evidence on which they must rely to defeat a Rule 12(b)(2) motion. Otherwise, it would be virtually impossible for Plaintiffs injured by products produced or distributed by foreign defendants to have their cases against those defendants heard in the states in which the Plaintiffs reside. It is unreasonable to expect the plaintiff in the instant case to have at his disposal at such an early juncture, before any discovery has been commenced – and indeed, before a majority of the other defendants have filed responsive pleadings – enough evidence to prove that LAZER has the requisite contacts with the forum state to justify the Court's exercise of personal jurisdiction over LAZER. Furthermore, discovery concerning jurisdiction will allow the Plaintiffs to refute and rebut some of the allegations contained in the Affidavit attached to LAZER's Motion to Dismiss.   The Plaintiffs, at this time, believe some of the allegations of Defendant's Affidavit are inaccurate, incorrect, and incomplete, especially in regard to the October 2019 contacts with Massachusetts

corporation ICC regarding the subject LAZER light guard installed in the subject press brake machine.

Wherefore, the Plaintiffs request that the court stay its ruling on LAZER's Motion To Dismiss, and allow time for the plaintiff to conduct discovery on the issue of the Court's personal jurisdiction over LAZER.

Respectfully submitted,
Ivan Laguna and Margarita Lopez
By their Attorneys,

/s/Michael J. Mascis
Richard J. Sullivan; BBO # 554085
Michael J. Mascis; BBO # 541772
Sullivan & Sullivan, LLP
83 Walnut Street
Wellesley, MA 02481
(781) 263-9400
rsullivan@sullivanllp.com
mmascis@sullivanllp.com

CERTIFICATE OF SERVICE

I, Michael J. Mascis, attorney for the Plaintiffs, certify that on December 30, 2023, I caused to be electronically filed the foregoing Plaintiff Opposition to Defendant LAZER Motion To Dismiss with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/Michael J. Mascis
Michael J. Mascis