UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IVAN LAGUNA, and )<br>MARGARITA LOPEZ )<br>    Plaintiffs )<br>)<br>v. )<br>)<br>LAZER SAFE, PTY, LTD, )<br>FIESSLER ELECTRONIK GmbH & CO., KG., )<br>ERMAK USA, INC., )<br>ERMAKSAN TURKEY, aka )<br>ERMAKSAN MAKINA SANAYI VE TICARET A.S., and)<br>JOHN DOE DISTRIBUTOR )<br>    Defendants )<br>) | C.A. No. 3:23-CV-30016 |

**PLAINTIFFS' OPPOSITION TO SUPPLEMENTAL MOTION TO DISMISS OF DEFENDANT LAZER SAFE, PTY, LTD**

Now come the plaintiffs, Ivan Laguna and Margarita Lopez ("the plaintiffs"), and hereby oppose the supplemental motion pursuant to Fed.R.Civ.P. 12(b)(2) Motion to Dismiss for lack of personal jurisdiction filed by the defendant Lazer Safe, PTY, LTD ("Lazer Safe" or "Defendant").

**BRIEF PROCEDURAL HISTORY**

On June 18, 2024, the Court entered an order permitting the Plaintiffs to conduct Jurisdictional Discovery to oppose the Defendants' Motions To Dismiss. The Plaintiffs proceeded to serve written discovery, and conducted depositions of the Defendants in the United States, Turkey, and Germany, via Zoom. The Plaintiff now supplements its original opposition, incorporating by reference their arguments, and offering the following facts supporting personal jurisdiction over Ermaksan.

**FACTS**

1. On or about September 29, 2020, the Plaintiff, was severely injured when his hands, moved forward through the safety/light laser, and entered the pinch point of the Subject Machine, when he fell forward while working as the operator of the Subject Machine in the course of business for his employer International Container Company, LLC, ("ICC") in Holyoke, Massachusetts (hereinafter referred to as the "Incident"). (Second Amended Complaint).

2. As part of jurisdictional discovery, the Plaintiffs obtained records of the OSHA investigation.(Ex. A).

3. According to the Plaintiff's statement from the OSHA investigation, the Incident occurred when the Plaintiff was working as the operator of the Subject Machine; he was bending metal stock into angle pieces in accordance with the designed function of the Subject Machine.(Exhibit A p.2 ). The Plaintiff stepped on a piece of flat stock on the floor by the base of the Subject Machine. (Id.)   As the Plaintiff stepped, the metal piece slid, and the Plaintiff fell forward, reaching out with both hands toward the Subject Machine to catch himself from falling.(Id.)   Both his hands grasped the lower die plate of the Subject Machine, whereupon the safety light curtain failed to prevent the Subject Machine from amputating the Plaintiff's fingers.  (Ex. A p. 2).

4. Lazer Safe manufactured the light curtain (proximity safety guard) which failed to operate to stop the Subject Machine when the Plaintiff's hands grasped the lower die plate of the Subject Machine.  Lazer Safe employee, integration engineer, Mehmet Tatli reviewed photos of the Subject Machine confirmed the Lazer Safe light curtain was a component of the Subject Machine. (Ex. B p.14, lines 3 – 11; 51 line 1 – 52 line 2).

5. Mr. Tatli is university trained, and licensed engineer, and he has worked for Lazer Safe since 2008. (Ex. B p.8 line 19 – p.10 line 10). Mr. Tatli works as an integration engineer for Lazer Safe, working with, and traveling to, OEM customers who are press brake manufacturers to assist in custom integration of Lazer Safe products into manufacturers' machines. (Ex. E p. 29 line 3 – p.30 line 10).

6. In regard to the Subject Machine, Mr. Tatli testified that he traveled to the Ermaksan factory in Turkey to install, for integration purposes, the Lazer Safe light curtain. (Ex. B. p. 12 line 16 to p.13 line 20). He installed the Lazer Safe components on one or two of the press brake machines, and after training, Ermaksan followed his integration with hundreds more machines. Id.

7. In October 2019, Mr. Tatli corresponded by email with Ermaksan service technician Ali Evci to provide technical assistance with the Subject Machine; the emails between Mr. Evci and Mr. Tatli incorporated correspondence with Michael Menard of ICC in Holyoke, Massachusetts. (Ex. B p. 32 line 19 - p.33 line 7)(Ex. C p. 1-39).

8. On October 4, 2019, Michael Menard emails Gary Holdson of THCO LLC for assistance in diagnosing the PCSSF code 2209 found on the Lazer safe module inside the cabinet on the Subject Machine. (Ex. J p. ERM0136).

9. Gary Holdson of THCO LLC had a technical role, providing service in integration of Lazer Safe product and technical support in the U.S.. (Ex. E p. 42 line 7-21). TCHO LLC is the Master Distributor and authorized spare parts stock list for Lazer Safe retrofit press brake guarding systems. (Ex.D p. 15 line 13 - p.16 line 20, Ex. F - Agreement).

10. In his email of October 4, 2019, Mr. Evci contacts Mr. Tatli, forwarding the chain of emails of Michael Menard of ICC, with the subject "FW: Lazer safe PCSS com.error (I

3

need help please!).'' Mr. Evci writes, "Hello Mr. Mehmet, we are reading error 2209 on the PCSS display when we have the customer check the PCSS due to the Lazersafe communication error in a 2007 model Lazersafe machine.  From what we understand from the condition codes, the error is 'internal fault detected'. Is there anything else that can be done other than changing the PCSS?  The machine is in America." (Ex.C p.36).

11. Mr. Tatli's response to Mr. Evci directs him to send the email to Lazer Safe's customer service, giving the address in Australia.  Mr. Tatli testified this request was made so the consultation would be recorded by Lazer Safe, and provided a "ticket" in the Lazer Safe customer service system. (Ex. B p.34 line 14 to p.36 line 6).

12. On October 7, 2019 Gary Holdson of THCO LLC contacts Michael Menard and informs him that he has spoken with Lazersafe and directs Mr. Menard to examine the PCSS unit on the Subject Machine for serial number or bar code to identify the variation of the model. (Ex. J p. ERM00136).

13. Mr. Tatli testified that he worked to diagnose the problem with the Subject Machine by researching the error code, and on October 7, 2019, Mr. Tatli then informs Mr. Evci that ICC can try to update the kernel software; and sends the kernel software version (Fx17700) to provide to ICC in Massachusetts. (Ex. C. p. 35).  Mr. Tatli further directs future steps, in the event that the software update does not work – the PCSS needs to be repaired or replaced with new one. (Id.).

14. On October 9, 2025, Gary Holdson of THCO LLC emails Michael Menard at ICC Massachusetts, and provides him with a copy of an email from Lazer Safe containing options and costs to repair the Subject Machine.  Lazersafe also requests additional detailed information about the Subject Machine. (Ex. J. p. ERM00135).

15. Mr. Tatli testified that Lazer Safe owns the kernel software, and ICC needed to load the kernel update onto a laptop, then connect it to the Subject Machine PCSS component. (Ex. B p.39 line 16 – 23).   Mr. Tatli tells Mr. Evci that ICC's Subject Machine must also be equipped with ISAGRAF, the second level software which communicates between kernel software and the Subject Machine, otherwise the Subject Machine would not work. (Ex. B p. 40 line 3 – 24).

16. On October 14, 2019, Ermaksan contacts Mr. Tatli for a price for a PCSS with shipping cost to send to America. (Ex. C p.34); and Mr. Tatli responds on October 15, 2019 with a price for a new PCSS controller, with ISAGRAFF software loading charge; and Mr. Tatli asks whether Lazer Safe or Ermaksan will install the program to the new PCSS; or whether anyone at ICC can try to install kernel and isagraph on the faulty PCSS on the Subject Machine. (Ex. C p. 32 - 34.).  After further back and forth regarding the high cost of the Lazer Safe products, Mr. Tatli then suggests a complex connection rig involving the new PCSS Lazer Safe control with the component press brake controller manufactured by Delem that exists on the Subject Machine. (Ex. C p. 31, 32).

17. Ufuk Kocael of Ermaksan Turkey testified that in 2019 he traveled to ICC in Holyoke Massachusetts to provide service.  (Ex. K p.9 line 5 – p.10 line 16).  At that time Lazer Safe, THCO LLC, and Ermaksan were in communication, and had the opportunity to correct, affix warnings to, and service, the Subject Machine, and the malfunctioning Lazer Safe light curtain.

18. In the OSHA record, Joseph Searles of ICC wrote an email to OSHA, dated March 12, 2021, detailing that in late 2019, ICC arranged for "a tech" from the manufacturer to come to Holyoke, Massachusetts, to inspect the Subject Machine,

5

> *"In regard to the brake, we had a tech from the manufacturer come into our facility late 2019. He inspected our brake which was having operational problems. He told us that we needed to replace the "brain" of the machine. He identified that part and told us what to order. We had two options, a knockoff of the factory part, or the original OEM part from the manufacturer. The OEM part was 12K as opposed to 5K for the knockoff. We purchased the OEM part because the manufacturer had told us this is a machine specific part and had to be programmed by the manufacturer. It had to be shipped from Australia to Turkey. Then it was preprogrammed in Turkey, sent to Florida then was shipped to us. Our credit card info was stolen during this whole process as well. Then we called to have them install it and they told us they could not send a tech for a while but that they could talk us through how to put it in. We put it in and because the brake was working, we figured every aspect of the machine was working."* (Ex.A, p.5).

19. Ex.G is a photo produced by ICC depicts the Lazer Safe PCSS-1 controller loaded with Kernel software, not yet installed on the Subject Machine. (Ex. B p.52 line 13 to p.53 line 17 , Ex. E p.31 line 2-p.32 line 10).

20. Michael Menard of ICC testified that he had no knowledge of how to install the replacement PCSS-F1 controller in October 2019 (Ex. L, p.33 line 3 –8); he needed guidance, and relied exclusively on the manufacturer Ermaksan's tech expert to instruct him over the telephone while he attempted to install the Lazer Safe component. (Ex L p.33, line 3 to p.34, line 19)."*I remember I think I put the module in, but it was – I remember having earphones in, and he was telling me how to do it over the phone.*" (Id. p. 32 lines 7-14).

21. In Jurisdictional Discovery, Ermak USA and Ermaksan's counsel, and Lazer Safe's counsel, producing email correspondence related to July-November, 2019 diagnosis and incomplete and inadequate repair to the Lazer Safe guard of the Subject Machine (Exhibit J- Ermak Production, and Exhibit C- Lazer Safe Production).

    a. The email chain documents the joint diagnosis performed in Turkey and the USA by Ermak USA and Ermaksan technicians, and in Australia and Texas, by Lazer

6

      Safe technical experts, of a faulty PCSS-F1 control unit for the Subject Machine. (Exhibit C, Exhibit J).

    b. The email chain also includes repair advice, sale prices and options, and delivery of software ("KERNEL") and hardware (component PCSS-F1 controller), and quotations of installation costs, including remote installation through software download, and direct "talk through" instruction. (Exhibit C p.25 - 27).

    c. The participants in the various stages of the email chain include Ken Searles of ICC in Massachusetts, Senol Rodoplu of Ermak USA, Hilya Yilmaz (nee Telci) of Ermak USA, Ufuk Kocael of Ermaksan in Turkey, Ali Evci of Ermaksan in Turkey, Umit Yildiz, a spare parts technician in Ermaksan Turkey, the service department of Ermaksan in turkey, Mehmet Tatli of Lazer Safe in Australia, and Gerald Holdson of TCHO LLC of Leander, Texas. (Ex. C and Ex. J).

22. Paul Sertis testified that he is in charge of the Lazer Safe website. (Ex. E p.15 lines 13-16). The Lazer Safe website contains information for someone at an IP address to access information about safety equipment manufactured by Lazer Safe for press brake machines. (Id. at p.22 line 15 – p.23 line 1.)  Part of Mr. Sertis duties is to develop brochures and markets for Lazer Safe safety systems; the brochures are designed to promote Lazer Safe and sell its products.  (Id at p.25 line 21 to p.26 line 11).

23. Paul Sertis testified the Lazer Safe website used Google Analytics in 2018 to 2020, but those records are not now accessible from Google. (Ex. E p. 17 line 3 – p.20 line 24) Mr. Sertis obtained the Google Analytics Report for May – August 2024 shown in Exhibit H (Id. at p. 17 lines 9-20, and Ex. H).

24. Ex. H shows Google Analytics, which includes engagement rates of the Lazer Safe Website for Massachusetts in May-August 2024. The Google Analytics website states that engagement rate and bounce rate are important metrics in Google Analytics that enables Lazer Safe to measure and analyze user engagement with their website; and the engagement rate is the percentage of engaged sessions on the website. The Massachusetts engagement rate for Lazer Safe's website is 68.4% in May-August 2024. (EX. I).

## ARGUMENT

I. **This Court should exercise Personal Jurisdiction over Lazer Safe in the Commonwealth of Massachusetts**

There are two steps in determining whether the exercise of personal jurisdiction over a defendant is proper: first, consideration of the applicable long-arm statute, and second, consideration of constitutional due process. See *Preferred Mutual Insurance Company v. Stadler Form Aktiengesellschaft,* 308 F.Supp.3d 463; *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016)A Corp., 812 F.3d at 58; *SCVNGR, Inc. v. Punchh, Inc.,* 478 Mass. 324, 85 N.E.3d 50, 52 (2017).

A. **Massachusetts Long Arm Statute M.G.L. ch. 233A sec. 3**

"A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's: (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth; (d) causing tortious injury in this commonwealth by an act or omission outside this commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this commonwealth.

8

Subsections a.), b.), c.) and/or d.) of the Massachusetts Long Arm Statute authorize personal jurisdiction over Lazer Safe because its agents and employees worked jointly with Ermaksan to cause tortious injury in Massachusetts to the Plaintiffs by acts or omissions both inside and outside of Massachusetts; and Lazer Safe transacted business, sold and supplied Lazer safe components to ICC in Holyoke Massachusetts, deriving revenue in the amount of approximately $8,000.00, from Lazer Safe components and installation it sold to ICC through THCO LLC. Mr. Evci, working with Mehmet Tatli of Lazer Safe, and Gary Holdson of TCHO LLC, diagnosed the malfunctioning PCSS-FI Lazer Safe component to the Subject Machine, and sold the replacement PCSS-F1 to ICC for $12,000.00.(Ex. A p. 5).

1. **Laser Safe conducted business jointly with Ermaksan in Massachusetts.**

An examination of the email chain (Ex. C and Ex. J) demonstrates how Mehmet Tatli of Lazer Safe, Gary Holdson of THCO LLC, and Avi Evci of Ermaksan were working hand-in-hand on the ICC Subject Machine malfunction in 2019.

In considering the Massachusetts Long Arm Statute, "' [t]he term "transacting business" is broadly construed,' ... and 'anything but the most incidental commercial contact' is sufficient." Cannonball Fund, Ltd. v. Dutchess Capital Mgmt., LLC, 84 Mass. App. Ct. 75, 98 (2013) (citations omitted). "'The question what activities constitute the transaction of business ... must be decided on the particular facts involved.'" Id.

Mehmet Tatli was an employee of Lazer Safe; and Gary Holdson was the technical service expert for Lazer Safe's exclusive Master Distributor, THCO LLC; and in October 2019, they, along with employees of Ermaksan, diagnosed the cause of the malfunctioning of the Subject Machine at ICC in Holyoke, Massachusetts. Mr. Tatli and Mr. Holdson also sold and distributed a new PCSS-F1 Lazer Safe press brake controller, along with kernel software, to ICC

through Ermaksan, with the full knowledge an intent to repair the Subject Machine located at ICC in Holyoke, Massachusetts. They were part of a joint enterprise, which resulted in Ermaksan adopting Mr. Tatli's recommendations, and sold ICC with a Lazer Safe light curtain that failed on September 29, 2020. The joint venture also encompassed the negligent installation via telephone directions to Michael Menard, who was untrained on how to install the Lazer Safe component and kernel software. (Ex. D p.ERM0082 – p.90) (Ex. L – p p.33, line 3 to p.34, line 19).

### Lazer Safe was a participant in the tortious injury to the Plaintiff in Massachusetts.

Ufuk Kocael testified that in 2019 he traveled to ICC in Holyoke Massachusetts to provide service. (Ex. K p.9 line 5 – p.10 line 16). The Plaintiffs maintain that at that time Lazer Safe, THCO LLC, and Ermaksan had the opportunity to correct, and failed to adequately warn, and service, the Subject Machine, and the malfunctioning Lazer Safe light curtain. This service visit was contracted and paid for by ICC.

The Plaintiffs have developed evidence to support the claim that Ermaksan, by and through Mr. Kocael, Mr. Evci, Mr. Tatli, Mr. Holdson, and several employees of Lazer Safe, Ermak USA and Ermaksan, were negligent in assessing and repairing the Subject Machine's Lazer Safe light curtain malfunction.

Ufuk Kocael's 2019 visit to ICC in Massachusetts, and inspection of the Subject Machine's malfunction failed to adequately identify the defect causing the Lazer Safe light curtain problem; and he failed to identify the inadequate warnings on the machine which were found by OSHA to be in violation of applicable safety regulations.(Ex. A p. 8-10).

The repair and replacement equipment that Mr. Evci, Mr. Tatli, and other Ermaksan employees provided to the malfunctioning Lazer Safe control component of the Subject Machine

was insufficient and inadequate, thereby causing the Lazer Safe component to fail on September 29, 2020, causing tortious injury to the Plaintiff.

In their back-and-forth analysis, Mr. Evci and Mr. Yildiz of Ermaksan, and Mr. Tatli of Lazer Safe, considered a software installation of Kernel and Isagraf software into the malfunctioning PCSS of the Subject Machine. (Ex. C p.3 - 10).  When the pricing was too expensive for ICC, Ermaksan worked on further possible solutions.(Ex. C. p.14).  Ermaksan and Lazer Safe finally settled on the inappropriate and inadequate solution to sell ICC a replacement PCSS-F1 component, and to install this critical component by having the untrained, inexperienced, Michael Menard of ICC in Holyoke Massachusetts follow installation instructions over the telephone from an Ermaksan technician in Turkey.  (Ex. L – p p.33, line 3 to p.34, line 19).

The OSHA investigation and citation proved that Ermaksan further failed to provide adequate warning stickers or signs with the replacement PCSS-F1. (Ex. A 3 p.6).   The evidence is that the PCSS-F1 installation was a failure, the defect remained in the Subject Machine, the Plaintiff was not adequately warned of the danger, causing the Plaintiff's injuries on September 29, 2020.

    B. **The exercise of jurisdiction under Massachusetts law is consistent with basic due process requirements mandated by the United States Constitution.**

For the exercise of personal jurisdiction to be constitutional, a defendant must have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95(1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940) ). The constitutional inquiry is highly 'fact-specific.' PREP Tours, Inc. v. Am. Youth Soccer Org., 913 F.3d 11, 17–18 (1st Cir. 2019) (quoting United Elec.,

11

Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1089 (1st Cir. 1992) ). Importantly, the "test is 'not susceptible of mechanical application; rather, the facts of each case must be weighed.' " Id. (quoting Kulko v. Superior Ct. of Cal., 436 U.S. 84, 92, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978) ).

The Plaintiffs claim specific personal jurisdiction over Lazer Safe, so the Court's constitutional analysis here has three components: relatedness, purposeful availment, and reasonableness. Plixer Int'l, Inc. v. Scrutinizer GmbH, 905 F.3d 1, 7 (1st Cir. 2018).

(1) The Plaintiffs can show relatedness: their claims directly arise out of or relate to the defendant's forum activities since Mr. Tatli's and Mr. Holdson's contacts with the Subject Machine, and its negligent service and repair caused the Plaintiff's injuries. Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005) (citing 163 Pleasant St., 960 F.2d at 1088-89). This is a "flexible, relaxed standard. N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25(1st Cir. 2005 ) (quoting Pritzker v. Yari, 42 F.3d 53, 61 (1st Cir. 1994) ), requires only that the claim have a "demonstrable nexus" to the defendant's forum contacts, Mass. Sch. of Law, 142 F.3d at 34.

(2) **The Plaintiffs can show purposeful availment**:

As defined by the court in *Nowak v. Tak How Investments*, 94 F.3d 708,716 (1996), in determining purposeful availment, the defendant's contacts with the forum state must be voluntary—that is, not based on the unilateral actions of another party or a third person. In addition, the defendant's contacts with the forum state must be such that he should reasonably anticipate being haled into court there. *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490; *Escude Cruz v. Ortho Pharmaceutical Corp.,* 619 F.2d 902, 905 (1st Cir.1980).

12

Lazer Safe's contacts with Massachusetts via the joint venture with Ermaksan represent a purposeful availment of the privilege of conducting activities in Massachusetts through provision of technical assistance to ICC, diagnosing and designing, the maintenance services to the Subject Machine in Massachusetts, and selling the Lazer Safe PCSS-F1 component and software, reflects an intent to engage with the local Massachusetts market.  Further, Paul Sertis of Lazer Safe testified that in 2018 to 2020 operated a website designed to promote and sell Lazer Safe products in Massachusetts.  The Google Analytics, which would identify the frequency and extent of the Lazer Safe website are not available to review, however, the 2024 report from Google Analytics shows that Lazer Safe had a 68.4% engagement with Massachusetts users of the Lazer Safe website.  (Ex. H p.2). Despite its lack of physical presence in Massachusetts, Lazer Safe has reached from Turkey and Australia into Massachusetts to solicit sales, conduct remote service through Ermaksan, and sell Lazer Safe products, thus invoking the benefits and protections of the forum's laws and rendering the defendant's involuntary presence in the forum's courts foreseeable.

It was foreseeable to Mr. Tatli and Mr. Holdson, that ICC was relying upon Lazer Safe's expertise in diagnosing and recommending the PCSS-F1 replacement with software.  And Mr. Tatli anticipated Mr. Menard's earphone installation of the PCSS-F1 onto the Subject Machine when he  that an employee of ICC, "Is there anyone in US who can try to install kernel and isagraph on the faulty PCSS?"  Lazer Safe know or should have known that if Mr. Tatli's makeshift solution for the Subject Machine was performed negligently or improperly, Lazer Safe would be held accountable in Massachusetts for the harm caused by the joint venture with Ermaksan.

In the case of Clune v. Alimak AB, 233 F.3d 538, 544 (C.A.8 2000) (wrongful-death action against the Swedish manufacturer of a construction hoist that allegedly caused a workplace death in Missouri; holding the manufacturer amenable to suit in Missouri), the Eighth Circuit stated, ." In this case, the foreign manufacturer had "successfully employ[ed] one or two distributors to cover the [entire] United States[,] intend[ing] to reap the benefit of sales in every state where those distributors market." Were the court to conclude that the manufacturer "did not intend its products to flow into Missouri," the court "would be bound to the conclusion that the [manufacturer] did not intend its products to flow into *any* of the United States." Id.

(3) **The Plaintiff can show reasonableness**:

In this case, Massachusetts' exercise of jurisdiction over Lazer Safe is reasonable under the five "gestalt" factors referred to in the case of In Turpin v. Mori Seiki Co., Ltd, 56 F.Supp.2d 121 (1999):  (a) the defendant's burden of appearing in Massachusetts, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.  These Gestalt factors encompass the competing interests of the plaintiff, the defendant and the judiciary, as well as governmental policy considerations. *Id*.

Lazer Safe argues that Massachusetts litigation would be burdensome because it located in Australia, however, that distance did not prevent Mr. Tatli and Mr. Hodgson from diagnosing and suggesting a solution for the malfunctioning Subject Machine located in Holyoke, Massachusetts.  The jurisdictional discovery in this case included Zoom depositions taken of Mehmet Tatli of Lazer Safe, located in Turkey, and Paul Sertis, located in Australia, without undue complaint or burden to Lazer Safe.

14

A fair consideration of the Gestalt factors favor the Plaintiffs' argument for personal jurisdiction over Lazer Safe. The Plaintiffs have chosen to seek recovery in the forum of their home state for what are alleged to be grievous injuries, and their task would be infinitely more burdensome if they were forced to litigate in another forum.

The Commonwealth of Massachusetts "has a significant interest in obtaining jurisdiction over a defendant who causes tortious injury within its borders" and "in providing its citizens with a convenient forum in which to assert their claims." *Id.*

Massachusetts also has a strong policy interest "in protecting its citizens from injuries caused by defective products," regardless of where those products were originally manufactured. *Benitez–Allende,* 857 F.2d at 30.

The judiciary has an "interest in obtaining the most effective resolution of the controversy" available. *See Nowak v. Tak How Investments,* 94 F.3d 708, at 718–719. This factor is not always decisive, but the Court notes that the plaintiff has chosen the forum in which the accident actually occurred, making convenient access to eyewitnesses and physical evidence more likely. *Id.* at 718.

With respect to the burden on the defendant, the First Circuit has noted that "it is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction," and it has taken the position that for this particular Gestalt factor to have any significance, the defendant must demonstrate that "exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Id.* No such showing has been made here.

In sum, the Gestalt factors are firmly oriented in the direction of finding personal jurisdiction of Lazer Safe in Massachusetts

The above stated evidence should be considered in total, and indicates that contrary to the claims in the defendants' Motion To Dismiss, defendant Lazer Safe did have a service and sales presence in Massachusetts, by and through their joint venture with Ermaksan, sufficient to meet the requirements of personal jurisdiction.

## CONCLUSION

This Court should deny Lazer Safe's motion to dismiss because the Plaintiffs have shown that personal jurisdiction exists in Massachusetts over the foreign corporation, based in Australia. Lazer Safe purposefully acted to diagnose the malfunctioning PCSS unit of the Subject Machine, suggest replacement, installation methods, and sold the replacement PCSS-F1 controller and software to ICC through Ermaksan. For all of the above - stated law and facts considered together, the Plaintiffs must be permitted to continue on to trial of this case before a jury.

## VI.    REQUEST FOR ORAL ARGUMENT

The plaintiffs suggest that oral argument may assist the Court with these motions.

Respectfully submitted,
Ivan Laguna and Margarita Lopez
By their Attorneys,

*/s/Michael J. Mascis*
Richard J. Sullivan; BBO # 554085
Michael J. Mascis; BBO # 541772
Sullivan & Sullivan, LLP
83 Walnut Street
Wellesley, MA 02481
(781) 263-9400
rsullivan@sullivanllp.com
mmascis@sullivanllp.com

## CERTIFICATE OF SERVICE

I, certify that on November 26, 2025, I caused to be electronically filed the foregoing Plaintiff Opposition to Defendant Lazer Safe's Motion To Dismiss with the Clerk of Court using the ECF system, which will send notification of such filing to all counsel of record.

*/s/Michael J. Mascis*
Michael J. Mascis